WASHINGTON SAVINGS BANK *et al.*, *Appellants*, v. BUTCHERS AND DROVERS' BANK *et al.*

### DIVISION ONE.

1. **Corporation**: CALL FOR UNPAID STOCK : LIMITATION. As between a corporation and a stockholder the liability of the latter on his unpaid stock does not mature until a call is made; it is then that the statute of limitations begins to run in the stockholder's favor.

2. ———: ———: ———. Where the officers of a corporation neglect to make a call for unpaid stock subscription and its affairs are in the hands of a court, the court may make the call in the interest of the creditors, though the stockholders are not made parties to the suit, and in such cases the statute of limitations does not begin to run until a call or some authorized demand is made.

3. ———: ———: ———: STATUTE. Where, however, an execution has been issued on a judgment against a corporation and returned unsatisfied, the judgment creditor may under our statute (R. S. 1879, sec. 736 ) have execution against a stockholder to the extent of the amount of the unpaid balance on his stock and in such case the action does not accrue in favor of the creditor until judgment is obtained and a *nulla bona* return made, and hence the statute of limitations for all the purposes of the proceeding commences to run from that date.

4. ———: ———: ———: ———. A call upon unpaid stock is not essential in the foregoing case, nor is a call necessary when the creditor brings his suit directly under Revised Statutes, 1879, section 745.

5. ———: UNPAID STOCK : CREDITOR'S BILL. A creditor's bill may be maintained in equity against stockholders of a corporation who have not fully paid up their stock subscriptions to satisfy debts of the corporation, notwithstanding the statute furnishes other remedies to the creditors, and in such suit it is no defense that the stock is payable upon call and that no call has been made.

6. **Statute of Limitations**: LEGAL AND EQUITABLE ACTIONS. The statute of limitations in this state applies to equitable as well as to legal causes of action.

7.   Statute of Limitations, Suspension of: INSOLVENT BANK. The president of an insolvent bank for five years previous to its suspension had managed its business with little assistance from the directors.   Upon its suspension without authority to that effect from the directors, he issued scrip to the creditors, payable in three years and secured the same by mortgage on his own property.   Without objection on the part of the directors, he closed up the bank affairs, collected the assets and applied them to the payment of the scrip until the remaining assets were levied upon under execution. The stockholders had not fully paid their subscriptions, the residue of which was payable upon calls by the directors which the latter had never made.   *Held,* that although upon the bank's suspension, a cause of action arose in favor of the creditors against the stockholders for their unpaid subscriptions, the running of the statute of limitations was suspended in three years by the issuance of the scrip since the bank was bound thereby.

8.   ———: ———: POWERS OF PRESIDENT.   The president in view of the facts in this case had the authority to make the extension of time, and it was binding alike upon the corporation and stockholders.

9.   Corporation: RATIFICATION OF ACTS OF AGENT.  A corporation may ratify the unauthorized acts of its agents and such ratification need not be evidenced by vote or formal resolution of the board of directors.

10.   ———: ———: PRESUMPTION.   When an unauthorized act of an agent of a corporation is clearly beneficial to the corporation, a presumption of ratification will arise from slight circumstances.

Appeal from   St.   Louis   City   Circuit   Court.—HON. L. B. VALLIANT, Judge.

REVERSED AND REMANDED.

*James P. Maginn* for appellants.

(1)   The statute of limitations is not a bar to this action.   *First.*   In the peculiar case of the liability of stockholders, it does not begin to run until a call by the directors of the corporation, or order of a court of equity, or other authorized demand.   *Lionberger v. Bank,* 10 Mo. App. 499; *Eppright v. Nickerson,* 78 Mo. 482; *Bingham v. Rushing,* 5 Ala. 403, 406; *Hotel*

*Co. v. L' Anson*, 42 N. J. L. 13 ; *Gibson v. Turnpike Co.*, 18 Ohio St. 398 ; *Bauer v. Railroad*, 13 Ill. 504 ; *Allen v. Railroad*, 11 Ala. 449. *Second.* If it does, in any case, begin to run, never until a reasonable time has elapsed after the legal assets of the corporation have been exhausted, under execution. 2 Morawetz, Corporations, secs. 883, 884 ; *Crim v. Walker*, 79 Mo. 335 ; *Glenn v. Dorsheimer*, 23 Fed. Rep. 696 ; *Ogilvie v. Ins. Co.*, 22 How. 380. *Third.* If the statute ever began to run¹ in this case, it was not, under point *second*, *supra*, until about January, 1883, under the facts of this case. *Fourth.* There was no dissolution of the corporation, the Butchers & Drovers' Bank of St. Louis, on July 13, 1877, within the meaning of sections 744 and 745, Revised Statutes, 1879. *Hogsden v. Donnelly*, 14 Mo. App. 548. *Fifth.* Even if the statute of limitations had barred a general " winding-up bill," on the theory that after July 13, 1877, the corporation ceased to exist, such fact would not affect this suit, which is simply a creditor's bill to get in "equitable assets," after exhausting, under execution, "legal assets," and this particular right of action could not and did not accrue to the creditors until after exhaustion of the legal assets, under execution or otherwise. *Slee v. Blum*, 19 Johnson Rep. 456, and comments of KENT, Chancellor, shown in 2 Kent's Commentaries, pages 311, 312. (2) There was no laches on plaintiffs' part. *Bliss v. Pritchard*, 67 Mo. 181, which also holds that laches must be pleaded. *Kelly v. Hurt*, 61 Mo. 406 ; *Klein v. Vogel*, 90 Mo. 239 ; *White v. Pendry*, 25 Mo. App. 547 ; *Bradshaw v. Yates*, 67 Mo. 233. (3) Set-off is not allowable in this action, it being clear from the evidence that the entire trust fund is a mere trifling amount as compared with the claims of creditors. *Webber v. Leighton*, 8 Mo. App. 502 ; *Shickle v. Watts*, 84 Mo. 410. (4) Proceedings, at the instance of individual creditors against individual stockholders under section 745, Revised Statutes, 1879, and under

section 736, by motion for execution, cannot be pleaded as "*res adjudicata*" by the stockholders so proceeded against, when sued in this action. *Simmons v. Heman*, 17 Mo. App. 444, 447. (5) The estates of deceased stockholders are liable. Lowell, Transfer of Stock, sec. 29; Thompson on Stockholders, secs. 248–254; *Coquard v. Marshall*, 14 Mo. App. 80; *Bank v. Stockholders*, 6 R. I. 154. (6) The distributees of estates of deceased stockholders are liable. *Coquard v. Marshall*, 14 Mo. App. 80; *Simmons v. Ellis*, 17 Mo. App. 475; *Walker v. Deaver*, 79 Mo. 664; *Hall v. Martin*, 46 N. H. 337. (7) Married women who are stockholders in this corporation are liable. *Simmons v. Dent*, 16 Mo. App. 288, and constitutional and statutory provisions therein cited in respect to this very bank. (8) The books of the corporation are evidence, *prima facie*, of ownership of shares therein. *Bowden v. Johnson*, 107 U. S. 263; *Hoagland v. Bell*, 36 Barbour, 57; *Turnbull v. Payson*, 95 U. S. 421, followed in *Railroad v. Applegate*, 21 W. Va. 180; R. S. 1879, sec. 737—now sec. 2518; *Skrainka v. Allen*, 76 Mo. 391; R. S. 1889, secs. 2503, 2504; Lowell, Transfer of Stock, sec. 80.

*Hitchcock, Madill & Finkelnburg* for Walsh, executor, respondent.

(1) Plaintiffs are not in a position to invoke equitable relief in the guise of a general creditors' bill, because they have heretofore secured a priority at law over other creditors to the extent of $16,000. One of the fundamental elements of equity jurisdiction in this class of cases is an equal distribution of the debtor's assets among all its creditors. Thompson on Stockholders, par. 259; Pomeroy's Equity, par. 410. (2) Plaintiffs' claim against these defendants is barred by the statute of limitations. Suit should have been brought within five years from July 13, 1877, when the

corporation became dissolved within the meaning of the law so as to confer a right of action against stockholders. R. S. 1879, secs. 3228, 3230; R. S. 1889, secs. 6773, 6775; *Moore v. Whitcomb*, 48 Mo. 543; *Savings Ass'n v. Kellogg*, 52 Mo. 583; *Chouteau v. Allen*, 70 Mo. 290, 336; *Slee v. Brown*, 19 Johns. 456; *Penniman v. Briggs*, 1 Hopk. Ch. 300, 303; Thompson on Stockholders, sec. 291; *Henry v. Railroad*, 17 Ohio, 187. (3) The dissolution of a corporation operates to mature the liability of its stockholders. *Garesche v. Lewis*, 15 Mo. App. 565; s. o., affirmed, 93 Mo. 197; *Henry v. Railroad*, 17 Ohio, 187; *Terry v. Tubman*, 92 U. S. 156; *Hatch v. Damon*, 101 U. S. 205. (4) "When a company becoming insolvent, as in this case, abandons all action under its charter, the ordinary mode of making calls upon stockholders cannot be pursued. The debt, therefore, from that time must be treated as due without further demand." *Henry v. Railroad*, 17 Ohio, 187, quoted in *Hatch v. Damon*, 101 U. S. 205, 214. (5) Unless statutory provisions make it necessary, the remedy against stockholders for unpaid stock is not dependent on the exhaustion of all other assets by execution. *Terry v. Tubman*, 92 U. S. 156; *Terry v. Anderson*, 95 U. S. 628; *Morgan v. Lewis*, 46 Ohio St. 1; Thompson on Stockholders, par. 316. Nor is a previous judgment necessary. *Kankakee Co. v. Kampe*, 38 Mo. App. 229; *Batchelder v. Altheimer*, 10 Mo. App. 181; *Turner v. Adams*, 46 Mo. 95. (6) The conduct of plaintiffs in waiting eight years before bringing suit constituted laches in equity. *Bliss v. Pritchard*, 67 Mo. 190; *Landrum v. Bank*, 63 Mo. 56. (7) Defendant, Julius S. Walsh, representing the estate of Mrs. Marie C. Chambers, is not liable in this action, because said Marie C. Chambers in fact never held more than fifty shares of the stock of said bank (being the fifty shares originally subscribed by her), and as to these fifty shares she had already responded in full on a stockholder's execution against her under section 736,

Revised Statutes, 1879, in the case of *Simmons v. Walsh*, executor of M. C. Chambers, No. 63,525, St. Louis circuit court. ( 8 ) The *pro forma* assignment of fifty additional shares by Mr. B. M. Chambers to his wife without her knowledge to subserve a purpose of his own as explained by him in his testimony did not make her liable to creditors in respect of the fifty shares thus transferred. The evidence tending to show ratification upon her part was insufficient. *Rogers v. Bank*, 69 Mo. 560 ; *Eystra v. Capelle*, 61 Mo. 578. ( 9 ) The judgment in the *Simmons case, supra*, was a bar to the present suit, for in the former as in the present suit it was sought to charge Mrs. Chambers' estate with a liability on one hundred shares, and it was then judicially determined that she held but fifty. *Donnelly v. Mulhall*, 12 Mo. App. 139, 140 ; *Bittner v. Lee*, 25 Mo. App. 559 ; *Railroad v. Traube*, 59 Mo. 355.

*W. H. Clopton* for Maguire, respondent.

( 1 ) It is the rule in this state that when a stockholder is proceeded against by a creditor of a corporation by motion under the statute, the stockholder is entitled to offset against his liability any demand he may have against the corporation. *Jerman v. Benton*, 79 Mo. 149. ( 2 ) The laches of plaintiff is a defense to the suit, so far as Maguire is concerned. Plaintiff's attorney knew of the proceeding by Welsh, and it would be a fraud upon Maguire to allow plaintiff now to recover against him. *Bradshaw v. Yates*, 67 Mo. 221 ; *Landrum v. Bank*, 63 Mo. 48. ( 3 ) A creditor cannot proceed by motion against single stockholders and then resort to a creditor's bill for deficiency. *Jerman v. Benton, supra ; Garrison v. Howe*, 17 N. Y. 458.

*M. L. Gray* for administrators of J. A. Wright, respondents.

( 1 ) The plaintiff's right of action against the bank and James A. Wright's estate accrued and existed

on the day the bank closed, to-wit, July 13, 1877.   On this thirteenth of July, 1877, the estate of Wright was in course of administration, and notice to creditors had been already given on, to-wit, July 12, 1877.   The two years' limitation of the administration act began to run in favor of Wright's administrators on that day, and also the five years of the general law.   The subsequent arrangement of the bank with the creditors to extend the time of payment for three years did not affect or stop the running of the statute in favor of Wright's administrators.   (2)   The abandonment of business by the bank, and its insolvency was so far a dissolution as entitled plaintiff, or any creditor, to file a bill against the stockholders ; and the right to do so accrued on the fourteenth of July, 1877.   *Bank v. Kellogg*, 52 Mo. 583; *Heralson v. Mason*, 53 Mo. 213 ;  *Shickle v. Watts*, 94 Mo. 420;  *Kehlor v. Lademann*, 11 Mo. App. 550 ; *Moore v. Whitcomb*, 48 Mo. 543 ; *Chouteau v. Allen*, 70 Mo. 336.  ( 3 )  The return of *nulla bona* on J. P. Sinele's execution, at June term, 1878, gave plaintiffs the right, but for their extension, to proceed against the stockholders in June, 1878.   *Bank v. Seligman*, 11 Mo. App. 142 ; *Knight v. Frost*, 14 Mo. App. 331 ; *Garesche v. Lewis*, 15 Mo. App. 565 ; 93 Mo. 197 ; *Marks v. Hardy*, 86 Mo. 232 ; *Paxon v. Talmage*, 87 Mo. 13 ; *Glenn v. Dorsheimer*, 23 Fed. Rep. 695 ; *Ogilvie v. Ins. Co.*, 22 How. 380.  ( 4 ) The judgment in A. J. Chaphe *v.* Wright's Administrators, these respondents, was a bar.   *Manning v. Roeder*, 11 Mo. App. 317 ; *Lewis v. St. Charles*, 13 Mo. App. 48 ; *Schricker v. Ridings*, 65 Mo. 208 ; *Donnelly v. Mulhall*, 12 Mo. App. 140 ; *Manville v. Roeder*, 11 Mo. App. 321 ; *Bittner v. Lee*, 25 Mo. App. 559 ; *Simmons v. Herman*, 17 Mo. App. 444.

BLACK, J.—The Washington Savings Bank and Rudolph Kohn brought this suit for themselves and all other creditors of the Butchers & Drovers' Bank, who should come in and contribute to the expenses of

the suit, against the defendant bank and some twenty or more stockholders therein, to recover balances due on unpaid stock. The circuit court gave judgment for all of the defendants on the ground that the cause of action was barred by the five years' statute of limitations, and hence did not consider the other questions presented by the pleadings and evidence. The facts will now be stated with a view only of disposing of this question.

The Butchers & Drovers' Bank was a corporation organized under the laws of this state. It became insolvent and ceased to do a banking business on the thirteenth of July, 1877, owing at that time about $700,000. The stock consisted of twenty-six hundred and ten shares of $100 each, upon which there had been paid in cash and dividends fifty per cent. and no more. At the commencement of this suit some of the stockholders had paid the balance due upon their stock, and the remaining resident solvent stockholders are made defendants.

Mr. B. M. Chambers was president of the bank for a period of ten years before its suspension, and during the last five years of that time the board of directors held but few meetings. In short, Mr. Chambers managed the business without aid from the directors. He got some of them together on the day the bank suspended. They opposed suspension, but the bank being insolvent he closed the doors.

Mr. Chambers as president of the bank called a meeting of the creditors, and at that meeting he proposed to issue scrip for the outstanding debts, to mature in three years, that is to say, on the first of August, 1880, and to secure the same by a mortgage upon property owned by his wife and sisters, he to go on and close up the business of the bank. The proposition was accepted by nearly all the creditors. The scrip was issued in the name of, and as obligations of, the bank and security given as proposed. The arrangement was made by

Chambers, as president, without any action on the part of the directors. During the three years Chambers collected in the assets and paid off from $400,000 to $500,000 of the scrip. Shortly after the expiration of that time, the remaining assets were levied upon under executions issued on judgments recovered on the unpaid scrip.

The plaintiff Kohn and one Kelcher were creditors of the Butchers & Drovers' Bank when it closed, and they received scrip in payment of their debts, thus extending the time of payment for three years. They brought suit against the bank, on this scrip in 1880. Kohn recovered judgment on the twenty-second of December, 1880, for $10,225, and another on the seventh of April, 1881, for $6,230; and in December, 1880, Kelcher obtained judgment for $15,330, which last judgment was assigned to the Washington Savings Bank, the other plaintiff in this case. Executions were issued and were returned *nulla bona* the sixth of June, 1881. Proceedings were then prosecuted against some of the stockholders under section 736, Revised Statutes, 1879, by means of which the plaintiffs collected some $16,000. This suit was commenced on the tenth of October, 1884.

There is this provision in the bank articles of association: "The remainder of the stock so subscribed shall be paid upon calls and upon such terms as the board of directors hereinafter mentioned may from time to time prescribe." No call was ever made by the directors.

To repeat, the important dates are:

The bank closed, July 13, 1877; three years' scrip issued August 1, 1877; plaintiffs sued the bank in 1880; judgments recovered, December 21, 1880, and April 7, 1881; *nulla bona* return of executions, June 6, 1881; this action commenced, October 11, 1884.

The important question is, when did this cause of action accrue in favor of these plaintiffs and against the defendant stockholders?

The stockholders by the terms of their subscriptions agreed to pay the remainder of their stock at such time as it should be called for by the board of directors. As between the corporation and a stockholder, the liability of the latter on his unpaid stock does not mature until a call is made, and it is then that the statute of limitations begins to run. Where the officers of the corporation have neglected to make the call and the affairs of the corporation are in the hands of a court, the court may make the call in the interests of creditors, though the stockholders are not made parties to the suit. In such cases the receiver or other officer of the court may collect the unpaid stock subscriptions by suits at law against the stockholders, and in such cases the cause of action does not accrue, nor the statute of limitations begin to run, until a call or some authorized demand is made. *Scovill v. Thayer*, 105 U. S. 143 ; *Glenn, Trustee, v. Semple*, 80 Ala. 159 ; *Lehman, Durr & Co. v. Glenn*, 87 Ala. 618 ; *Glenn, Trustee, v. Williams*, 60 Md. 93 ; *Hawkins v. Glenn*, 131 U. S. 319 ; Wait on Insolvent Corporations, sec. 631.

Where, however, an execution has been issued on a judgment against a corporation and returned unsatisfied, the judgment creditor may, under our statute, have execution against a stockholder to the extent of the amount of the unpaid balance on his stock. R. S. 1879, sec. 736. In such cases the cause of action does not accrue in favor of the creditor and against the stockholder until judgment is obtained and execution returned *nulla bona ;* and it must follow that the statute of limitations, for all the purposes of such a proceeding, commences to run from that date. Cook on Stock & Stockholders [2 Ed.] sec. 225. In such cases a call upon unpaid stock is not essential ; nor is a call necessary when the creditor brings his suit directly against the stockholder under section 745. That section gives the creditor a direct action against a stockholder in case of dissolution of the corporation.

This suit is not, however, founded upon either of these statutes. It is simply a creditor's bill. It is not even a general winding-up bill. It is conceded on all hands that unpaid stock is a fund which the corpora-tion holds for the payment of its debts, and the object of this suit is to satisfy these unpaid debts out of this fund, the only remaining one of the insolvent corpora-tion. Such a proceeding may be maintained in equity, notwithstanding the statute furnishes other remedies to the creditors. In a suit like this, brought against the corporation and stockholders, it is no defense that the stock is payable upon call of the board of directors and that no call has been made. On this subject it was said in *Hatch v. Dana*, 101 U. S. 205: "And it would seem to be singular if the stockholders could protect themselves from paying what they owe by setting up the default of their own agents. But in this case the company went out of business before the complainant obtained his judgment, and it does not appear that since that time it has had any officers who could make the call. * * * However this may be, it is well settled that a court of equity may enforce payment of stock subscriptions though there have been no calls for them by the company," citing *Henry v. Railroad*, 17 Ohio, 187, where it is said: "When a company becom-ing insolvent, as in this case, abandons all action under its charter, the original mode of making calls upon stockholders cannot be pursued. The debt, therefore, from that time must be treated as due without further demand." "This," says the court in the *Hatch–Dana case*, "means, of course, as between the debtor and creditor of the corporation. After all, a company call is but a step in the process of collection, and a court of equity may pursue its own mode of collection so that no injustice is done to the debtor."

It must, therefore, be held that a call for the unpaid stock was unnecessary to the maintenance of

this suit.   Our statute of limitations applies to equita-ble, as well as legal, causes of action.   With these results, it is insisted by the defendants that this suit could have been commenced on the thirteenth of July, 1877, when the bank ceased to do a regular business, and that the cause of action accrued at that date.

The debt held by one of the plaintiffs and that held by the assignor of the other were due when the bank suspended, but the time of payment was extended until the first of August, 1880, by the issuing and acceptance of the scrip.   Until this scrip matured the plaintiffs had no cause of action, either against the bank or stock-holders.

But the defendants insist that, as this scrip was issued by the president without any action on the part of the directors, it does not have the effect to stop the running of the statute in favor of the stockholders.

As the corporation was insolvent, it was certainly within its proper corporate powers to make an assign-ment for the benefit of the creditors, or to make some arrangement with them whereby the assets could be collected and properly applied.   This act of the presi-dent in procuring an extension of time was, therefore, one not out of, but clearly within, the corporate powers of the company.   The objection must, therefore, resolve itself into this inquiry, whether the power to make the assignment had been conferred upon him as president. We are not advised what powers he had by force and operation of the by-laws, if any, the corporation had. The undisputed evidence, however, is that the directors intrusted to, and devolved upon, the president the entire management of the affairs of the bank.   This state of things had existed for years prior to the sus-pension.   " The authority of the subordinate agents of a corporation often depends upon the course of dealing which the company or its directors have sanctioned.   It may be established, without reference to the official record of the proceedings of the board, by proof of the

usages which the company has permitted to grow up in its business, and of the acquiescence of the board charged with the duty of supervising and controlling the company's business." 1 Morawetz on Private Corporations [2 Ed.] sec. 509.

While the act of the president in procuring this extension of time without any act on the part of the directors is an unusual exercise of power, still it must be remembered that the president was for all practical and business purposes the bank, and this too with the knowledge and approval of the directors. We have no hesitancy, therefore, in concluding that he had the authority to make the arrangement which he did make for an extension of time, and that it is binding alike upon the corporation and its stockholders.

Besides this, it is competent for a corporation to ratify the unauthorized acts of its agents, and the ratification need not be evidenced by a vote or formal resolution of the board of directors. *Bank v. Fricke*, 75 Mo. 178. Here the bank for three years proceeded to settle up its affairs, collect and pay out from $400,000 to $500,000 pursuant to the agreement made with the creditors, without a word of objection from the directors or stockholders, so far as we are informed. The arrangement was one highly beneficial to the bank; for it is manifest that thousands of dollars were saved and applied in discharge of debts, which, but for the agreement with the creditors, would have been consumed in fees and other expenses. Where an unauthorized act of an agent of a corporation is clearly beneficial to the corporation, a presumption of ratification will arise from slight circumstances. 2 Morawetz on Private Corporations, sec. 629. A more complete case of ratification could hardly be made out than that disclosed by the evidence in this case.

It must, therefore, be and is held that this scrip constituted valid obligations of the bank, and being

valid as to the corporation it is binding upon the stock-holders. No distinction can be made between the liability of the bank on this scrip and the liability of the stockholders to pay up their stock subscriptions to discharge these obligations. As before said this scrip did not mature until August, 1880, and until that time the plaintiff had no cause of action against the bank or stockholders. The cause of action did not accrue prior to that date, and, as five years had not elapsed between that date and the commencement of this suit, the plea of the five-year statute of limitations must fail. As to this defense it is unnecessary to say whether the statute began to run at that date, or when there had been a *nulla bona* return of the execution.

As some of the defendants, who are administrators, have pleaded the special two years' statute, it may be proper to say that, in our opinion, the cause of action did accrue, at least, when these executions were returned *nulla bona ;* namely, the sixth of June, 1881. At that time the plaintiffs were in a condition to pursue the remedy pointed out by section 786 of the statutes. At that time the assets of the bank had been collected or sold out under executions, so that the corporation no longer existed for the purpose for which it was created, and it was a dissolved corporation for all the purposes of proceeding under section 745 of the statutes. *Moore v. Whitcomb*, 48 Mo. 543. The plea of the two-year statute is, therefore, well taken.

As stated at the outset the circuit court simply ruled upon the question presented by the plea of the statute of limitations.

We, therefore, reverse the judgment, and remand the cause for further proceedings. All concur.