ANDERSON-TULLY COMPANY *v.* GILLETT LUMBER COMPANY.

Opinion delivered October 16, 1922.

1. CORPORATION—POWERS.—The powers of business corporations are derived from the State, by compliance with the laws of its incorporation and the receiving of its charter.

2. CORPORATIONS—POWERS OF OFFICERS.—The powers of officers of a corporation are derived from the corporation itself through the action of the stockholders and managing board.

3. CORPORATIONS—LACK OF AUTHORITY TO MAKE CONTRACT.—Where a corporation, sued on an alleged contract, seeks to avail itself of the defense of *ultra vires*, it must plead that defense; but where it relies on the lack of authority of its officer to make such a contract, it may deny that it made the contract and place upon the plaintiff the burden of showing the officer's authority.

4. CORPORATIONS—AUTHORITY OF OFFICER—EVIDENCE.—Evidence *held* to show that a corporation's secretary was without authority to sell a tract of its standing timber.

5. PRINCIPAL AND AGENT—AUTHORITY OF SPECIAL AGENT.—One dealing with an agent not clothed with general authority nor with apparent authority to act is bound to discover whether the agent had authority to bind his principal.

6. CORPORATIONS—AUTHORITY OF SECRETARY—The secretary of a corporation has no authority by virtue of his office to sell the *corpus* of the corporation; to do so he must be authorized by the directors and stockholders, and a purchaser dealing with him must ascertain his authority.

7. CORPORATIONS—AUTHORITY OF SECRETARY—EVIDENCE.—The authority of the secretary of a corporation, as special agent, to sell its property cannot be proved by his acts and declarations.

8. CORPORATIONS—UNAUTHORIZED ACT OF AGENT—RATIFICATION.—Evidence *held* not to show ratification by a corporation of the unauthorized act of its agent in disposing of its property.

Appeal from Arkansas Chancery Court, Southern District; *John M. Elliott*, Chancellor; affirmed.

*H. B. Anderson* and *A. G. Riley,* for appellant.

A contract entered into must be specifically performed. 143 Ark. 97.

The appellees cannot be held to be innocent purchasers. C. & M. Dig. sec. 6979; 132 Ark. 158; 98 Ark. 105; 87 Ark. 60; 75 Ark. 228; 84 Ark. 203. The plea of innocent purchaser was not available, as notice of *lis pendens* was duly filed. 27 Ark. 6.

The rule against Sunday contracts is not applicable. 29 Ark. 386; 44 Ark. 74.

The defense of the lack of authority of the officers to make the contract was not specially pleaded. 80 Ark. 67; 89 Ark. 435.

The authority of the officers was established and their act in making the contract was the act of the corporation. 62 Ark. 7; 74 Ark. 190; 86 Ark. 287; 79 Ark. 45; 79 Ark. 338; 89 Ark. 435; 90 Ark. 301; 103 Ark. 283; 105 Ark. 641; 116 Ark. 520; 132 Ark. 371; 115 Wisc. 583; 92 N. W. 234; 95 Am. St. Rep. 254; 2 Thompson on Corporations (2nd Ed.), Art. 1465; 7 R. C. L. par. 616, p. 621, par. 620, p. 623.

*T. J. Moher* and *Jno L. Ingram,* for appellee.

There was no contract between appellant and appellee. Balmer had no authority to enter into the contract. 103 Ark. 283.

Sunday contracts are void. 29 Ark. 386; *New York Life Ins. Co.* v. *Adams,* 151 Ark. 123.

Appellees, having fully performed the contract, are entitled to protection as bona fide purchasers. 39 Cyc. 1697.

Bills for specific performance are addressed to the sound discretion of the chancellor. 12 Ark. 421; 19 Ark. 51; 34 Ark. 663.

WOOD, J. The appellant instituted this action against the appellees. The appellant alleged that the Gillett Lumber Company was the owner of Spanish grants Nos. 2358 and 2407, and that on the 12th day of August, 1919, said company, by written contract, sold to the appellant

all the merchantable timber located and growing on said land, except the pecan and hackberry, for the sum of $6,000; that S. S. Colvin, S. R. Williams and J. L. Williams claimed interest in the merchantable timber purchased by the appellant, under a contract entered into between them and the Gillett Lumber Company; that the alleged purchase was subsequent to, and with full knowledge of, the purchase of the timber by the appellant and after notice of *lis pendens* which had been duly given by the appellant. Appellant prayed for specific performance of the contract and for damages on account of timber cut and removed by the acts of the appellees.

The appellees answered, denying all the material allegations of the complaint, and denying the existence of any contract to sell the timber to appellant. Appellees, Colvin and Williams, set up that they purchased the land in good faith from the Gillett Lumber Company upon a valuable consideration, and without any notice whatever of appellant's alleged purchase.

B. C. Tully, who was secretary of the Anderson-Tully Lumber Company, testified that he conducted the negotiations for his company with one Cal Balmer, who was the secretary and treasurer of the Gillett Lumber Company. Appellant received a letter from Balmer on July 10, 1919, offering for sale the timber on the land in controvesy. On the 10th of August thereafter the appellant wired Balmer, "Accept your proposition of $6,000 cash for all merchantable timber." On the same day Balmer wired appellant, "O. K. timber sold, will forward abstract to DeWitt at once. Letter follows." On August 13th Balmer wrote appellant affirming telegram of the 10th, and stated in the letter that he had instructed Swineheart, president of the company, to deliver the abstract to W. N. Carpenter for examination, and directing the appellant to close the deal with Swineheart. In the letter Balmer requested the reservation of certain timbers. Appellant replied on August 25th stating that it would be satisfactory to reserve the timbers mentioned, and also

stating that it was instructing its agent to make reservations in the deed. On August 27th Balmer wrote appellant stating that Carpenter, appellant's agent, had been instructed to close the deal, and requested appellant to signify the size of the trees to be classed as merchantable. On September 12th Tully received a letter from Balmer, canceling all previous communications with him, and advising appellant to take the matter up with Swineheart, president of the Gillett Lumber Company, since his (Balmer's) authority had ceased. On September 17th appellant wrote to Balmer acknowledging receipt of his last letter, and stating that appellant had sent its representative to see Swineheart, and that Swineheart had advised appellant that Balmer had charge of the sale, and that appellant would have to deal with him, and also advising Balmer that it had accepted his proposition for the sale and purchase of the timber on the terms proposed by him in all good faith, and had expended time and money in making the negotiations, and that, as soon as its attorney approved the title, proper deed, with draft attached, would be forwarded for the lumber company to execute. The appellant, through its agent Carpenter, had the title examined and approved, and forwarded a deed to the bank at Bluffton, Ohio, with its certified check, and also with instructions to the bank to deliver the deed to Balmer, and upon execution of the same to pay over the purchase price agreed upon. The deed was not signed by the Gillett Lumber Company, nor was the purchase price of $6,000 paid to it, but the appellant tendered and was ready to pay that amount at any time upon the execution of the deed.

Tully further testified as to the quantity and value of the timber removed from the land after the appellant's purchase and as to the damages sustained by reason thereof. The witness stated that Balmer's correspondence was not written on the stationery of the Gillett Lumber Company, but that Balmer was the secretary of that company and had authority to act for it, according to in-

formation contained in his letters. Witness understood that he was dealing with the authorized agent of the Gillett Lumber Company; that Swineheart, the president of the company, had indirectly about the same time offered to appellant the timber for the same amount. Other witnesses testified on behalf of the appellant, and their testimony tended to prove that Swineheart had made an offer of the timber to the appellant upon the same terms as those made by Balmer. It was shown that Swineheart had offered the timber in controversy to other parties for $6,000, and had stated that he had authority to sell the same.

On behalf of the appellees, Colvin testified that he and the Williamses were in the cooperage business. They purchased the timber on the land in controversy. The contract for the purchase was entered into in writing on September 15, 1919. This contract was introduced in evidence. Witness stated that they had paid $32,500 on the contract; that at the time they entered into the contract for the purchase of the timber they had no knowledge or information of any claim of appellant to the timber. They first heard that appellant claimed some interest in the land about October 1, 1919. Witness stated that he had been negotiating for the purchase since September 12, 1919; that neither he nor the Williamses were interested in the Gillett Lumber Company. Their purchase was made in good faith. They purchased the timber from H. A. Strode, who conducted the negotiations for the Gillett Lumber Company. The deed which the contract of purchase called for was executed and delivered between the 1st, 2nd and 3rd of October, and the cash payment of $32,500 was made at the time of the delivery of the deed. Before the cash payment was made witness had heard rumors to the effect that the appellant had filed suit against the Gillett Lumber Company in regard to the purchase of the timber. Witness made no effort to verify the rumors, as he and his associates knew nobody in the transaction except the Gillett Lumber

Company. Witness, at the time he made the first deposit, knew that the appellant was making a claim, but they did not know of any claim of the appellant to the timber in controversy before entering into the contract for the purchase of the same. The contract was not fully executed and the same delivered until after October 1st, but witness considered the deal fully consummated before then, except the delivery of the deed.

The testimony of S. R. and J. L. Williams on behalf of the appellees was substantially to the same effect as the testimony of Colvin. The written executory contract for the purchase of the timber was introduced in evidence, showing that the same was executed on the 15th day of September, 1919, and was signed by Strode, as agent for the Gillett Lumber Company, and by Colvin and the two Williamses.

Witnesses who were directors and stockholders of the Gillett Lumber Company testified to the effect that there was never any resolution of the board of directors of the company, a corporation, authorizing its secretary and treasurer, Balmer, or the president, Swineheart, to sell the timber in controversy; that there had been no meeting of the stockholders or the board of directors for the purpose of considering the sale of timber in controversy to the appellant. The corporation was under the control of five directors; that the last meeting of the directors was held in 1919 for the purpose of surrendering the charter of the company and closing up the business; that the last meeting prior to that time was in February, 1918.

Swineheart, the president, among other things, testified that Balmer, the secretary and treasurer, who lived at Bluffton, Ohio, had written him to the effect that he was offering the timber for sale. At first he did not protest, but after he found what Balmer was trying to do he did protest. He called on Carpenter, the agent of the appellant, on August 27th, with the abstract and intended to leave it with him, but as soon as he found out

the terms upon which Balmer had offered the timber he would not sign such a contract; that Strode, a real estate man, sold the timber to Colvin and the two Williamses. He stated that Balmer had never discussed with him the sale of the timber. He testified that the sale of the land to Colvin and the two Williamses was in good faith, and the contract was not the result of conspiracy between the Gillett Lumber Company and them to cheat and defraud the appellant.

Balmer testified that he was not authorized by resolution of the board of directors to enter into a contract for the sale of the merchantable timber to the appellant, and that he never discussed the matter with any of the members of the board. He and two of the directors lived at Bluffton, Ohio, and Mr. and Mrs. Swineheart, the other two directors, lived at Gillett, Arkansas. He stated that Wise and the other directors did not have any knowledge of the letters and telegrams that passed between witness and the appellant. He denied that there was ever any conspiracy between the directors of his company and Colvin and the two Williamses to cheat and defraud appellant in the sale of the timber. Witness had never seen Colvin or the Williamses. The sale was made to them in good faith. Witness had made an offer to sell the timber to other parties beside the appellant, but none of the directors knew about it. Other directors testified substantially corroborating the testimony of Swineheart and Balmer to the effect that there was no meeting of the directors to authorize either the president or the secretary to sell the timber in controversy, and their testimony was also to the effect that Balmer had never discussed the contemplated sale of the timber to the appellant with any of them. Their testimony shows that there was a meeting of the directors and a resolution passed by the board September 22, 1919, authorizing the president to employ H. A. Strode to make the sale of the land in controversy, and also a resolution authorizing the president and secretary to make a deed conveying the timber

in controversy to Colvin and the two Williamses, and there was still a third resolution of the board on the first of October, 1919, authorizing the president and secretary to execute a corrected deed to the same parties.

Upon substantially the above facts, the court found that Balmer had no authority to sell the timber and no authority to execute the contract which appellant seeks to have specifically performed; that the letters and telegrams upon which the appellant relies to prove the contract were sent by Balmer without the knowledge and consent and without the authority of the board of directors of the Gillett Lumber Company; that such company was not bound by the acts of Balmer. The court found further that the contract entered into between the Gillett Lumber Company and Colvin and the two Williamses was a good and valid contract, entered into without any knowledge on the part of Colvin and the Williamses of the letters and telegrams that had passed between Balmer and the appellant; that Colvin and the Williamses had fully performed their contract. The court thereupon entered a decree dismissing the appellant's complaint for want of equity, from which is this appeal.

1. The appellant contends that the appellees have not, in their separate answers, specifically raised the issue that the secretary and treasurer of the Gillett Lumber Company was without authority to enter into the contract for the sale of the timber in controversy; nor have they specifically raised the issue that the Gillett Lumber Company, a corporation, itself had not decided upon and authorized a sale of its timber. Appellant contends that, before proof could be made upon these issues, it was necessary for the answer to specifically set them up. Appellant relies upon the cases of *Simon* v. *Caffe*, 80 Ark. 67, and *Winer* v. *Bank of Blytheville*, 89 Ark. 435, to sustain its contention. But the facts of those cases clearly differentiate them from this case.

In *Simon* v. *Caffe*, a corporation was sued on a note indorsed by it. There was no denial of the existence of

the corporation, and no denial of the indorsement, and we merely held that where a business corporation is sued upon an indorsement by it of a promissory note and seeks to avail itself of the plea of *ultra vires,* or want of power on the part of the corporation or its officers or agents to make such indorsement, then it is necessary to set up in its answer that the corporation had no power to make such indorsement and that its officers or agent acted without power in making the same. In discussing this question in *Simon* v. *Caffe, supra,* we said: "But a corporation cannot avail itself of a want of power or lack of authority of its officers to bind it unless the defense is made on such grounds." Citing Thompson on Corporations, 7617, 7619. These citations are repeated in *Winer* v. *Bank of Blytheville, supra,* and in the latter case what the author stated is quoted and the quotation clearly shows that the author was discussing the defense of *ultra vires.* That is what this court had in mind in the case above mentioned, and the words "or lack of authority," used by Chief Justice HILL in *Simon* v. *Caffe, supra,* were used synonymously with the words "want of power."

The powers of a business corporation are derived from the State by compliance with the laws of its incorporation and the receiving of its charter. The power of its officers is derived from the corporation itself through the action of the stockholders and managing board. Sec. 1717, C. & M. Digest. The powers of the corporation itself and of its officers must not be confused with the authority of its officers or agents. In *City Electric Street Ry. Co.* v. *First National Exchange Bank,* 62 Ark. 33-41, we held that "whatever power the president and secretary of business corporations have to act for the corporation in business matters must be delegated and special. The ministerial affairs of a corporation "are presumptively special, and the directors are the only general agents when acting as a board. The officers of a corporation, as such special agents, have no power to

bind it except within the limits prescribed by the charter and by-laws; and persons dealing with such officers are charged not only with notice of the authority conferred, but also of the limitations and restrictions contained in the charter and by-laws." 2 Thomp. Cor., sec. 1600.

Now, if a corporation seeks to avail itself of the defense of *ultra vires,* or a want of power to make a contract, it must plead that special defense; but if a corporation seeks to avail itself not of the defense of a want of power, but that it did not enter into the contract upon which it is sued, and that therefore there was no such contract, it may avail itself of such defense by denying the existence of such contract and pleading in its answer that it did not enter into any such contract. Such answer raises the issue that there was no contract, and places the burden upon the plaintiff to prove it, and when the issue is thus joined the corporation may show the lack of authority upon the part of its officer or agent to enter into such contract.

This is the second appeal in this case (see 143 Ark. 97). On the first appeal we held that the complaint stated a cause of action for a specific performance, and that such a decree could be awarded if the proof showed that Balmer had authority to bind the Gillett Lumber Company by his letters and telegrams to the appellant. On the former appeal we said: "It is true, the exhibits to the complaint do not disclose who Balmer is, nor what authority he had to act for and bind the defendant. But that is a matter of proof. The complaint alleged a valid contract for the sale of the timber, and the exhibits do not conflict with that allegation. When the case has been developed, these exhibits may or may not prove sufficient to bind the defendant. That will depend on Balmer's authority to act for it."

At the trial from which this appeal comes the proof as to Balmer's authority to bind the Gillett Lumber Company was fully developed, and we are convinced that a decided preponderance of the evidence shows that Bal-

mer had no authority to bind such company. The preponderance of the evidence, indeed, the undisputed evidence, shows that Balmer, on his own motion, without the knowledge or consent of the other directors, issued and sent the letters and telegrams upon which appellant relies to prove a binding contract between it and the Gillett Lumber Company for the sale of the timber in controversy. These letters and telegrams were not signed by Balmer as secretary of the company, and were not on the company's stationery. There is an utter absence of proof on the part of the appellant to show that Balmer had any authority to make the sale in controversy, except as might be gathered by what Balmer himself did and said in the premises.

But no principle is better established than that one dealing with an agent is bound to ascertain the extent of his authority. *Oliver Construction Co.* v. *Erbacher,* 150 Ark. 549. "One dealing with an agent not clothed with general authority, nor with authority to act, is bound to discover whether the agent had authority to bind his principal." *Pierce* v. *Fioretti,* 140 Ark. 306. A secretary of a corporation has no authority, by virtue of his office, to sell the property, the *corpus* of the corporation. That must be done by authority of the directors and stockholders. If Balmer, therefore, had any authority to make the sale of the timber in controversy, it must have been special authority conferred upon him by the stockholders and the board of directors. It was incumbent upon the appellant to ascertain the extent of his authority to make the contract upon which it grounds its action. *City Elec. Ry. Co.* v. *First Nat. Exchange Bank, supra; Grant* v. *Burrows,* 139 Ark. 16. Appellant could not prove Balmer's authority as special agent by his acts and declarations in the premises. The fact that he assumed to act does not show that he had authority to act, and there was no testimony other than his own statements in the letters and the assumption by him of authority to act in the negotiations.

The undisputed testimony shows that Balmer was not authorized by the stockholders or board of directors to sell the timber in controversy. There was no testimony to prove that the Gillett Lumber Company clothed him with apparent authority to make such a contract. There was no testimony in the record to prove ratification by the Gillett Lumber Company of the unauthorized contract between Balmer and the appellant. The testimony is to the contrary. Therefore let the decree be affirmed.