CLEBURNE COUNTY BANK v. BUTLER GIN COMPANY.

Opinion delivered October 26, 1931.

504

*Brundidge & Neelly,* for appellant.

*Miller & Yingling* and *Cockrill & Armistead,* for appellees.

BUTLER, J., (after stating the facts). The first question for our determination is the validity of the mortgage of the Butler Gin Company executed July 11, 1927, by O. B. Henderson, its president, and J. Q. Adams, its secretary. It is the contention of the appellee corporation and G. R. Butler that this mortgage was void for the reason that it was not authorized at any meeting of the board of directors, and was made without the knowledge and consent of the stockholders, and that this

unauthorized action on the part of the president and secretary had not been ratified by the corporation. There is but little conflict in the evidence on this question. It will be remembered that at the time of the execution of the mortgage there were four directors, Henderson, Adams, Butler and Ghent, Ray having ceased to be a director. Butler and Ghent testified that they never at any time attended a directors' meeting where the execution of the note and mortgage in question was authorized or discussed, and that they had never received notice of any directors' meeting called for that purpose. Henderson and Adams admitted that Butler was not present in person at the directors' meeting, but they did not say whether Ghent was present or not. One of the officers of the bank who looked after this matter of busi-. ness testified that when the question of the giving of the mortgage and the execution of the note by Butler was discussed witness advised Henderson and Adams that it would be necessary to call a directors' meeting to authorize the execution of same, and that under his supervision a notice was prepared to be sent to the remaining directors. Adams, the secretary, testified that this notice was prepared, and Henderson testified that it was duly mailed.

Ray testified that he was not a member of the Butler Gin Company when the mortgage was executed, as he had sold the one share of stock he owned to Henderson in 1926.

When the foregoing testimony is analyzed, it is apparent that, whether Butler and Ghent were notified of the directors' meeting or not, neither attended such meeting. Henderson himself states that Butler was not present, and neither he nor Adams contradicted the statement of Ghent that he was not present. Therefore the meeting was held only by Henderson and Adams, and as these did not constitute a majority of the board of directors under § 1713 of Crawford & Moses' Digest, and § 28 of act No. 250 of the Acts of 1927, a quorum was not present, and there was no legal meeting of the board of directors for the transaction of business, for the articles

of agreement of the Butler Gin Company provided that the business of the corporation should be conducted by a board of five members, all of whom should be stockholders.

It is well settled, as a general proposition, that the president and secretary of a corporation are not empowered to bind it by their signatures to commercial paper unless such authority is expressly conferred by the charter or by the board of directors. *City Elec. St. Ry. Co.* v. *First Nat. Bank,* 62 Ark. 33, 34 S. W. 89, 31 L. R. A. 535, 54 Am. St. Rep. 282, and authorities there cited. See also *Anderson-Tully Co.* v. *Gillett Lbr. Co.,* 155 Ark. 224, 244 S. W. 26. This rule, however, is subject to important qualifications, one of which is that where the act is performed by the officers through whom the corporation usually functions and results in benefit to the corporation, it will be bound where the transaction was had under circumstances by which knowledge might be imputed to it. Where the unauthorized act of officers is clearly beneficial to the corporation, slight circumstances will be sufficient to impute knowledge and will effect a ratification of that act. *City Elec. St. Ry. Co.* v. *First Nat. Bank, supra; Anderson-Tully Co.* v. *Gillett Lbr. Co., supra; Love* v. *Metro. Church Assn.,* 181 Ill. App. 102; *Washington Savings Bank* v. *B. & D. Bank,* 107 Mo. 133, 17 S. W. 644, 28 Am. St. Rep. 405; *Knowles* v. *N. T. T. Co.,* (Tex.) 121 S. W. 232. Especially is this true where the other party to the transaction has acted in good faith, and a repudiation of the transaction will result in harm and disadvantage to him.

In the instant case the mortgage on the machinery executed by the People's Gin Company was of record and gave Butler constructive notice that the machinery installed at Armstrong was bound for a debt to the appellant bank, and he was not deceived or misled to his prejudice in any just or reasonable sense, nor was the Butler Gin Company. The machinery was the security for the debt due the appellant bank, and the change in the mortgage did not alter the substance of the security, but only

changed its evidence. It seems to us that common honesty and fair dealing required the application of the exception to the general rule, and that all the surrounding circumstances impute to the Butler Gin Company such knowledge as would estop it from disavowing the act of Henderson and Adams, and, as the Products Corporation has succeeded to the rights of the Butler Gin Company, this estoppel must extend to it also. Thompson on Corp., (3 ed.), vol. 3, § 2077.

Unquestionably the Butler Gin Company benefited by this transaction, and, since to accomplish this, the appellant bank relinquished a valid mortgage on the identical machinery, it would be inequitable for the appellee corporation to take advantage of an unauthorized act of the president and secretary executing it which was intended to, and did, result in its benefit. The mortgage is therefore valid, and the appellant bank is entitled to recover its debt, and the learned chancellor erred in holding otherwise.

This brings us to the question of the relative rights of Butler and the appellee Products Corporation. In the first place, it will be noted that the corporation has lost nothing by this transaction, nor is it placed in a more disadvantageous position than it before occupied. The debt due it by the People's Gin Company antedated the purchase by Butler of the physical assets of the Butler Gin Company, and it advanced no more money on the faith of that transaction. It is also unquestionable that the mortgage taken by the appellant bank from the Butler Gin Company was a part of a series of transactions which were put in motion at the instance of appellee Products Corporation, and consummated for its advantage. Williams, the agent in charge of the Dixie Oil Mill belonging to the Products Corporation, testified that he knew nothing of the transaction between the Butler Gin Company and the bank, but the circumstances weigh heavily against this statement. It was Williams who pressed for a mortgage on the Pangburn ginnery to secure debts which were before unsecured; he knew

of the financial condition of Henderson and of the People's Gin Company; he was acquainted with Butler; and the amount of the debt due by the People's Gin Company to the bank was a matter of public record. Therefore, he must have known that the consideration for the satisfaction by the bank of the Pangburn mortgage was the taking of a new mortgage on the machinery at its new site in Armstrong. Adams and Henderson both testified that he knew of all these transactions and that he was familiar with them. He therefore had grounds for believing that, when Butler bought the machinery and building, it was reasonable to expect a balance due to the appellant bank, and Henderson testified positively that, when he assigned the note, it was as collateral security for the debt already owing by the People's Gin Company; that he informed Williams of the balance due the bank, and that from the proceeds of the $3,000 note the bank would first be paid and its lien satisfied; that Williams took the note with that understanding and with full knowledge of Butler's equity. Williams denied all this and testified that he took the note in due course of business without any knowledge or information of the rights of the bank or Butler.

The conduct of Henderson indicates throughout these entire transactions that he was honestly attempting to deal justly as far as possible with all those to whom he was obligated, and the evidence clearly shows that, with the exception of the actual operation of the gins, he managed the business of the People's Gin Company at Pangburn and the Butler Gin Company at Armstrong, and his testimony in regard to the assignment of the Butler note to the Products Corporation accords with his general conduct and with what an honest man would do under the circumstances.

In the concluding statement of appellee's brief the statement is made that "the great weight of the testimony showed *and the chancellor found* that the appellee acquired the note of G. R. Butler from O. B. Henderson before maturity for value and without notice of any

such equities of Butler as are asserted by him.'' As we view the evidence and the decree rendered by the chancellor, neither supports the contention of appellee. The decree appears to be predicated on the theory that the mortgage of the Butler Gin Company to appellant bank was void, for, although it was prior in point of time to the chattel mortgage given by Butler to Henderson, and was to secure a subsisting indebtedness, the chancellor decreed the latter the paramount lien and did not attempt to adjudicate the question of Butler's equities. It is clear that Butler ought not to have to pay the note twice, and that the evidence shows that it was not the intention of any one that he should, but that he was protected to the extent of the balance due the appellant bank.

It follows from what we have said that the decree of the chancellor must be reversed, and the cause will be remanded with directions to enter a decree according to the principles of equity herein announced. It is so ordered.