STEWART ELECTRIC COMPANY OF SOUTHWEST ARKANSAS, INC. *v.* MEYER SYSTEMS CORPORATION et al

82-49                                    632 S.W.2d 422

Supreme Court of Arkansas
Opinion delivered May 10, 1982
[Rehearing denied June 1, 1982.]

*Danny P. Rodgers* of *Honey & Rodgers,* for appellant.

*House, Holmes & Jewell, P.A.,* for appellees.

DARRELL HICKMAN, Justice. This appeal concerns a dispute over a debt between three corporations. Stewart Electric, the appellant, supplied material worth $5,822.23 to a construction job at a Firestone Tire and Rubber Company plant in Prescott, Arkansas. Meyer Systems Corp., a Texas corporation, was the prime contractor and it hired Bildon Industries Inc., as general contractor, to do all electrical work. Stewart filed this suit against Meyer claiming it was liable for the debt. Bildon had gone bankrupt. Firestone simply interpleaded the amount claimed asking that it be paid to either Stewart or Meyer. The case was tried to the judge without a jury and only three witnesses testified. The only records Stewart had, thirty-two "tickets" for the job, were introduced into evidence. The trial judge found that Meyer was not liable on this open account; Meyer had not contracted for the supplies and Stewart had failed to prove by a preponderance of the evidence that Meyer, through its alleged agent, had either expressly or impliedly authorized the contract with Stewart. Denying Stewart's claim, the judge awarded the interpleaded money to Meyer. We affirm.

On appeal Stewart alleges essentially two errors: The

court was wrong in its findings, and the Wingo Act precludes Meyer from getting the money and that, therefore, the money should go to Stewart.

While the legal issue of this case is agency, that is, whether Meyer actually entered into a contract with Stewart for the material, the resolution is purely a fact question. The trial court, after hearing the witnesses, and examining the evidence, found the facts to be against Stewart. In order for us to reverse that judgment we would have to find the judge was clearly erroneous in his findings. ARCP Rule 52. The trial judge correctly stated it was Stewart's burden to prove by a preponderance of the evidence that a Meyer employee had the express or implied authority to make the contract. *Jackson* v. *M.F.A. Mutual Insurance Co.*, 169 F. Supp. 633 (W.D. Ark. 1958), *aff'd*, 271 F.2d 180 (8th Cir. 1959).

The plaintiff called only one witness, James Ellis Stewart, the president of the Stewart family corporation. Stewart said his first knowledge of the agreement was when he overheard a conversation between his father and an employee of Meyer, whose first name was Weldon. He said on the basis of that conversation an account was set up so that material could be supplied to the Firestone job. He said he called Firestone to check on Meyer, since they had had no previous dealings with the company, and was told by a woman that Meyer would be a good account. He said he understood that Meyer was not to be billed until after the job was completed. Stewart said after Meyer was billed and did not pay the account, he contacted a Mr. Keys at Meyer and he said the account would be paid. Two of the tickets were made out to Meyer, one dated August 6, 1979, and another dated August 8, 1979. The first one was signed by Weldon Geron. The rest were all made out to "Beldon Industries," or "Bildon Industries," or "Bil-don Industries." Stewart said the August 6, 1979, ticket was the first ticket issued but was dated later when the tickets were posted. The first tickets, according to dates, were three dated June 19, 1979, all made out to Bildon. Stewart also testified that Nick Grasel, the president of Meyer, assured him the account would be paid. Nick Grasel testified that Meyer was the prime contractor for Firestone; that Bildon was the general contractor for Fire-

stone and also responsible for the electrical work. He denied that Meyer ever authorized any of its representatives to obligate Meyer to Stewart, or that any had the authority to do so. He said Weldon Geron was sent by Meyer to the job site to check on the work and to assist Bildon in expediting material to the site. He denied that he ever acknowledged to Mr. Stewart that Meyer was liable on the account.

Weldon Geron testified that he was working for Meyer at the time in question and made several trips to Prescott to check on the job, pick up material, and keep the job moving. He said he had no authority to obligate Meyer for any of the equipment used by Bildon and that he did not authorize Stewart to open an account for Meyer. He said he did pick up some equipment at Stewart's and signed for it, but that when he saw a ticket made out to Meyer he told Stewart to change it, that it was a mistake because the account was Bildon's.

If an agent has the express or implied authority to bind the principal, then the principal is bound by the agent's actions. That is undisputedly the law, as both parties and the judge agreed. *Jackson* v. *M.F.A. Mutual Insurance Co., supra.* But this case involves the application of the law to the factual question of whether Geron had the express or implied authority to bind Meyer. The trial court specifically found that the appellant had failed to prove that proposition by a preponderance of the evidence. There is ample evidence to support the trial court's findings. All but two of the tickets were made out to Bildon. The tickets seem to square with Geron's testimony, and Meyer's president denied he ever assured Stewart the bill would be paid. The trial court obviously chose to believe the testimony offered by Meyer.

It is unfortunate that Bildon did not pay this account and Stewart must suffer a loss, but it does not follow that Meyer owes the account as a matter of law. The trial court, sitting as a jury, found that Stewart failed to make its case, a decision we cannot on this record overturn.

The second issue raised is one that was not presented to the trial court. It is argued the "Wingo Act" prohibits Meyer from recovering the $5,822.23 from Firestone. The Wingo

Act is Ark. Stat. Ann. § 64-1202 (Repl. 1980), and it generally prevents a foreign corporation, not authorized to do business in Arkansas, from enforcing a contract in Arkansas.

While it is alleged that Meyer was a foreign corporation not authorized to do business in Arkansas, nowhere by pleading, orally, or even in a motion after trial to dismiss the case without prejudice, did Stewart invoke the Wingo Act and ask that Meyer be prevented from collecting the money interpleaded by Firestone. That argument is raised for the first time on appeal. We do not consider such arguments. *Wilson* v. *Lester Hurst Nursery, Inc.,* 269 Ark. 19, 598 S.W.2d 407 (1980).

Affirmed.

PURTLE and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. I respectfully disagree with the decision in this case. I believe an injustice has occurred. Simply stated, by this decision we have permitted one company to order goods on credit from another company, receive the direct benefit of those goods and yet refuse to pay for them on the theory that the employee who ordered them had no authority to bind the purchasing company. I regard the result as clearly against the weight of the evidence and not in keeping with the law.

The trial court found in effect that Stewart Electric Co. failed to meet the burden of proving Mr. Weldon Geron, an employee of Meyer Systems Corporation, had authority to purchase electrical goods and materials by binding the credit of Meyer Systems Corporation. That holding is erroneous for two reasons: The proof shows an implied authority by Geron and even if such authority were lacking, Meyer Systems ratified his acts by accepting the benefit of those goods. Additionally, the president of Meyer Systems assured Stewart Electric the account would be paid.

In stating the facts in this dissent I have not adhered to the rule that all inferences are to be given the prevailing party because I believe a study of the entire record fully

supports this factual account and, too, I take it from the trial court's comments at the close of trial he regarded Mr. Stewart as a credible witness, as he gratuitously praised his "sincerity, honesty and integrity," at the same time making findings difficult to reconcile unless Mr. Stewart's testimony was false on a number of points.

Meyer Systems contracted with Firestone Tire and Rubber Co. to build a "carbon black system" at Firestone's Prescott plant. Meyer then hired Bildon Industries at a fixed fee to serve as general contractor to perform the concrete, mechanical and structural, plumbing and electrical work. The plan miscarried, as Bildon performed the work ineptly or belatedly, or both, and Meyer had to assume active involvement. It sent its chief draftsman, Mr. Weldon Geron, from Houston to Prescott to oversee the work. At first he commuted, but later, around June 1979, he took up residence in Prescott to "live with the job," as he termed it. Meyer's president, Mr. Nick Grasel, explained why Mr. Geron was sent to Arkansas:

> We sent him into the field because Bildon was kind of dragging with the concrete work. We wanted him to come in here and assist Bildon, and to answer any questions, and *to expedite material,* to check the work or the material as it came in, make sure there were no shortages, and if there were, *to go ahead and expedite that material, get it on the site so we could get the job done* in the time frame that we would normally or the customer would expect to get it done. (My italics.)

Thus, his express assignment was to "expedite materials" and that is what he did. In mid June, 1979, Geron called on Stewart Electric Company, a small family-owned company in Prescott, and (according to Stewart) explained the contract with Firestone and sought to buy materials on credit on behalf of Meyer Systems. Mr. James Stewart contacted Firestone and was assured Meyer was under contract and was reliable. During the next six to eight weeks Stewart Electric sold Meyer on credit nearly $6,000 in electrical supplies. Sometimes the items were picked up by Mr. Geron, at other times by employees of Bildon. On occasion, Mr. Geron went

to Texarkana where he bought electrical supplies from Dealers Electrical Supply and charged them to Stewart Electric.

Shortly after the first purchases were made Stewart was asked to write up their sales tickets under Bildon's name rather than Meyer's, so the two companies could keep the accounts separated and, thereafter, the sales tickets were written in the name of Bildon. Again according to Stewart, Meyer had asked Stewart to bill them when the job was completed so Stewart waited. In March of 1980 Mr. Stewart called Firestone and learned the job had been completed, though Firestone was withholding payment. Stewart billed Meyer and Meyer asked Stewart to bill Bildon Industries, which Stewart did as an accommodation. Bildon returned the bill with a statement the charges were made by Meyer's employees. Mr. Stewart says he called Mr. Ted Keys, president of Meyer, and that Mr. Keys promised to see the bill was paid. Witnesses for Meyer did not refute this testimony. When Meyer still did not pay, Stewart contacted Firestone for help and Firestone called Meyer. By that time Mr. Keys had been replaced by Mr. Nick Grasel, who came to Prescott to find an angry Firestone official, upset because bills for materials had not been paid. Mr. Grasel told Firestone, he says, *not* that Bildon, rather than Meyer, was responsible, but that he would see the matter was straightened out. Mr. Grasel contacted Stewart (again, *not* to say that Meyer did not owe the account) to explain that because Bildon had cost Meyer $80,000 on the job, Meyer wanted to settle with Stewart for half the amount due, which Stewart understandably refused. Caught in between, Firestone interpleaded the money it was withholding ($17,000) and Stewart and Meyer went to trial. The trial court, sitting as a jury, found that Stewart had not proved Mr. Geron's authority sufficiently. The trial court announced his findings as follows:

> Let the record reflect that it is the finding of the court that the plaintiff has not met the burden of proving; first, that there was a contract between Meyer and Stewart; that there was a representation by Mr. Weldon Geron of an authority to bind Meyer. (T. 114)

I believe the trial court found against Stewart Electric, not so much on the facts as on a misconception there was insufficient proof of a contract between Meyer and Stewart Electric or proof that Mr. Geron had expressly represented himself as having the authority to bind Meyer. I believe the proof was sufficient on both counts.

Stewart supplied to Meyer's employees electrical materials which Meyer was contractually obligated to furnish Firestone under its contract and Meyer received the direct benefit of those materials. If Bildon had failed to furnish those materials, it was Meyer's duty to do so. No express contract between Stewart and Meyer was required. When one party received and benefits from the use of goods furnished by another the law implies a contract of sale and an obligation to pay, irrespective of any express contract. See 67 Am. Jur. 2d *Sales* § 63 and 77 C.J.S *Sales* § 34 (b), where the rule is stated:

> Where, in the absence of an express contract, one person delivers goods to another under circumstances indicating that a sale is intended, and the other does not object or offer to return the goods but retains and uses them, the contract of sale will be implied.

As to whether Mr. Geron had authority to bind Meyer, it is plain he was sent to "expedite" the job and obtain the materials necessary to complete the work and the law gives an agent the implied actual authority to perform all acts necessary to the execution of his express authority. *McWilliams Auto Company* v. *Gibbons,* 197 Ark. 617, 124 S.W.2d 211 (1939); *U.S. Bedding Co.* v. *Andre,* 105 Ark. 111, 150 S.W. 413 (1912); *Roach* v. *Rector,* 93 Ark. 521, 123 S.W. 399 (1909).

A case having many similarities to the case before us is *Stewart-McGehee Const. Co.* v. *Brewster,* 176 Ark. 430, 3 S.W.2d 42 (1928), where we held that a construction foreman had implied authority to order materials on credit, notwithstanding the testimony of the president of the construction company that he had no authority to make such contracts. By putting him in charge of the work with authority to order materials he had the implied authority to

order any necessary materials for the work. The authority of an agent to bind his principal is even broader where, as here, the actions of the agent benefit the principal, especially where the third party has acted in good faith and a repudiation of the contract would result in harm and disadvantage to him. *Cleburne County Bank* v. *Butler Gin Company*, 184 Ark. 503, 42 S.W.2d 769 (1931).

Two arguments by Meyer Systems must be mentioned. It argues that with only one exception, the sales tickets introduced by Stewart are made out to Bildon rather than Meyer. But the significant fact is that the initial ticket written up on the day Mr. Geron first came to Stewart, is made out to Meyer Systems and is signed by Mr. Geron. This exhibit documents the fact the account was opened in Meyer's name and that Mr. Geron held himself out as able to bind Meyer. The ticket bears a later date, August 6, 1979, but Mr. Stewart explained how that occurred and Mr. Geron did not dispute either his explanation or that the ticket was the first charge.

Next, Meyer Systems argues that it has already paid Bildon under its contract and should not be required to pay twice for the same goods. If that were so, it might cast a different light on the evidence, but that is not an established fact, indeed, there is not one word of evidence to support the argument. Neither witness for Meyer, one of whom was its president, was even asked if Meyer had paid Bildon for the materials, or for anything else, and, thus, so far as this record is concerned Meyer has paid neither Bildon nor Stewart. Moreover, it seems unlikely in the extreme that Meyer would have fully paid a subcontractor whose performance was so poor as to necessitate Meyer's virtually taking over the job to the extent of an $80,000 loss.

I would reverse with directions to enter a judgment in behalf of appellant.

PURTLE, J., joins.