## PIERCE *v.* FIORETTI.

### Opinion delivered October 27, 1919.

1. PRINCIPAL AND AGENT—SALE OF AUTOMOBILE—SCOPE OF AGENT'S AUTHORITY.—Appellee was in the business of selling automobiles and one P. was a special sales agent for appellee, and his authority was limited to taking orders for the sale of automobiles only within a certain territory, and *held,* where P. undertook to make a sale in territory not in the limited district, the sale could become binding only when accepted and approved by appellee.

2. PRINCIPAL AND AGENT—SCOPE OF AUTHORITY—SPECIAL AGENT— DUTY OF THIRD PARTY.—One dealing with an agent not clothed with general authority nor with apparent authority to act, is bound to discover whether the agent had authority to bind his principal; one dealing with such an agent has no right to rely on any presumption that such authority was given the agent nor to trust to any mere assumption of authority by the agent.

3. PRINCIPAL AND AGENT—SALE OF AUTOMOBILE—SCOPE OF AUTHORITY—LIMITATIONS UPON TERRITORY.—Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess.

4. SAME—SAME—SAME—SAME.—M. had the agency for the sale of two makes of automobiles, the "D" and the "E." M.'s agency to sell the "D" car in Sebastian County excluded the city of Fort Smith, but M. did have the agency to sell the "E" car in Fort Smith. M. employed one P. to sell the "D" car in parts of Sebastian County outside Fort Smith. *Held,* an attempted sale of a "D" car in Fort Smith by P. was invalid, being without the au-

thority or approval of M., and that the fact that P. was seen driving both "D" and "E" cars in Fort Smith, did not render the attempted sale within the apparent scope of his authority.

Appeal from Sebastian Circuit Court, Fort Smith District; *Paul Little,* Judge; affirmed.

*Gallaher & Gean,* for appellant.

1. Payne was the agent of appellee to sell cars; he was the general agent of Fioretti in selling cars in Fort Smith, and his local representative there. A person dealing with an admitted agent has a right to presume that the agent is a general agent. 103 S. W. 79; 146 *Id.* 130; 132 Ark. 371; 201 S. W. Rep. 508.

2. There was no notice to appellant of any limit on Payne's general agency or authority, and the court erred in admitting testimony about a contract between the Hartford Valley Motor Sales Company and Payne, and in its instructions to the jury. Cases *supra.*

*John H. Holland* and *Geo. W. Dodd,* for appellee.

1. Payne had authority to sell the car. One dealing with an agent is at once put on inquiry and is bound to discover whether the agent has authority to do the proposed act and has no right to trust to the mere presumption of authority, nor to the mere assumption thereof by the agent. 92 Ark. 315; 94 *Id.* 301; 150 S. W. Rep. 413.

2. Agency can not be proved by the declarations of one assuming act as agent in the absence of the principal. 93 Ark. 600; 90 *Id.* 104; 80 *Id.* 228; 2 Wharton on Ev., § 1183; 85 Ark. 252; 46 *Id.* 222; 33 *Id.* 316. Payne was only authorized to take orders and transmit them to the Motor Sales Company for acceptance or rejection. He had no authority to deliver cars or collect for them or exchange cars or take notes. He had no real authority to do what he did and he was not acting within the scope of his apparent authority. Possession of the car was not sufficient. 31 Cyc. 1647; 100 Ark. 363; 101 *Id.* 69; 2 C. J. 100.

3. The authority of an agent to bind his principal must be shown not by his declarations and acts but by

positive proof of authority. 132 Ark. 155; 126 *Id.* 405; 105 *Id.* 446. The transaction was so far outside the scope of Payne's authority, real or apparent, that the court properly granted a peremptory instruction for plaintiff, and the judgment should be affirmed.

WOOD, J. This is an action instituted by the appellee against the appellant to recover the possession of a five-passenger Dort automobile.

The appellee testified that he was the owner of the Hartford Valley Motor Sales Company, hereafter for convenience called Motor Company; that one Mr. McCallum was the sales manager and had authority to employ salesmen; that he, witness, did not have authority from the manufacturers of the Dort cars to sell the same in Fort Smith; that he had the sub-agency embracing the south part of Sebastian County, but under his contract he could not sell in Fort Smith; that Pierce had in his possession a car belonging to witness; that Pierce told witness that he bought the car from Payne, who said that the car was sold by the Hartford Valley Motor Sales Company, and that he was the agent of and had an interest in said company. Witness was negotiating with a party at Jenny Lind for the sale of the car in controversy; that Payne was to go out and close the deal and deliver the car, but instead of doing this, brought it to Fort Smith and sold it to Pierce.

According to the testimony of the appellee the contract he had with Payne was that when he, Payne, delivered a car he had to have a slip signed which had to be accepted by witness or Mr. McCallum; that Payne was to see Mrs. Dodson at Jenny Lind and close the deal on paper, he was to take so much pay cash and the balance in notes.

Mr. McCallum testified that he was the sales manager of the Motor Company and had authority to employ salesman for that company; that he met Payne at Fort Smith to employ him as a commission salesman; that Payne's authority was limited; that, insofar as any trade

on second-hand cars or accepting any paper in payment of cars, before Payne could do either it would have to be accepted by the sales manager; that this condition is printed on sales slips which the Motor Company used; that there is a place for the purchaser to sign when he buys the car, his address, then a place for the salesman to sign, then a place at the bottom of the slip for the sales manager to sign when he accepts the sale; that these blank slips were furnished the salesmen and read as follows:

"Hartford Valley Motor Sales and Service Co.

"Hartford, Ark............., 191.....

"I hereby authorize you to enter my order for a ..............automobile, Model.................to be delivered to me on or about...............and for which I agree to pay on signing this order $..............., and the balance when notified the car is ready for delivery.

"Price of car f. o. b. Hartford..................................................

"Extra equipment ......................................................................

"Total ..............................................................................................

"Prices to change without notice.

"Purchaser's signature ...........................................................

"Purchaser's address ...............................................................

"Salesman's signature ..............................................................

"Accepted ....................................................................................

"Manager Retail Department."

No contract made by Payne was binding until accepted by Fioretti or himself. Witness did not accept the order or approve the sale to Pierce. Payne worked for the Motor Company something like two months, during which time he did not sell any cars and take any old cars on them as part payment either for Fioretti or witness. Witness did not hear of the transaction in controversy until after Payne had left the country. Payne made no report to the company of the pretended sale. The Motor Company had no authority to sell Dort cars in Fort Smith. The salesmen employed by witness were furnished with the particular kind of car that he was to sell, to ride around over the country to get orders and

to demonstrate. If he made a sale, the company delivered from the stock on the floor a car like that.

Appellant testified substantially as follows: That he lived in Fort Smith; that Payne made three or four trips to his house in a Dort car and that they were a week or ten days making the trade and that he finally bought the car from Payne on Saturday; that he gave him $200 in cash and a note for $300 due in thirty days; that he knew that Payne was an agent but knew nothing of any limited authority; that Payne had this car in his possession and had been trying to sell it to him for about ten days; that after the sale was closed and the car delivered, money turned over and agent gone, he had a conversation with Mr. Fioretti in which Mr. Fioretti admitted to him that Payne was his agent. Witness stated that Fioretti said that Payne approached him about this very sale before the car was sold to Mr. Pierce and that this conversation occurred in Mr. Dodd's office. Witness said the statement was not made in an effort to compromise. He testified that the car was second-hand when he bought it and had been driven about a thousand miles.

Witness Shucknecht testified: that he met Payne about the middle of May, 1918; that he was selling, so far as witness knew, Elcars in Fort Smith. Witness was the manager of Southern Motor Sales Company and had the Dort agency for Fort Smith. He testified that he had a conversation with Fioretti about his agent Payne selling Dort cars here as well as Elcars. Witness did not know anything about authority Payne had from Fioretti. Witness understood that Payne was selling cars for Fioretti. One of witness' salesmen had been trying to sell Pierce a car and Payne beat him to it. About the same time that the sale to Pierce came up, Payne took a car from witness' company and delivered the same to Mrs. Dodson at Jenny Lind. Witness saw Payne with the Dort car sitting out in front of his place a number of times; one day he got out and looked on the car to see whether or not it was a car Payne had sold for witness,

but it was not one of witness' cars and witness let it go at that.

Fioretti in rebuttal testified that he told Pierce in Dodd's office, when they were endeavoring to compromise, that Payne had no authority to make sales for him of the Dort car; that he, Pierce, should have known there was something crooked about the deal because Payne was willing to take the old car at $450, when no one else offered him more than $250.

The above is all the testimony that is material to the issue involved.

At the conclusion of the testimony the court instructed the jury to return a verdict for the plaintiff for the automobile sued for or its value at the time it was taken.

The defendant below, appellant here, asked the court in several prayers for instructions to submit the issue to the jury as to whether or not Payne was the agent of the appellee and as such had authority to sell the car in controversy. This the court refused.

Proof was taken upon the issue as to the value of the car and the jury returned a verdict in favor of the appellee in the sum of $718.75. From the judgment rendered in appellee's favor is this appeal.

(1) The court correctly instructed the jury to return a verdict in favor of the appellee. The undisputed evidence as we view it shows that Payne was only a special sales agent for the appellee and that his authority was limited to taking orders for the sale of Dort cars in the territory not including Fort Smith, where the alleged sale took place. That these orders, before they were binding on the appellee, had to be accepted by the owner, the appellee, or his general sales manager, and that the sale on orders taken by agent Payne did not become complete until same was so approved.

There were no declarations or acts on the part of the appellee or his sales manager to justify the inference that he had clothed Payne with the general author-

ity to make sales of Dort cars or that they had clothed him with the apparent authority to make sales at any other place or in any other manner than that contained in his contract for the agency.

(2) It is familiar law that one dealing with an agent not clothed with general authority nor with apparent authority to act is bound to discover whether the agent had authority to bind his principal. One dealing with such an agent has no right to rely on any presumption that such authority was given the agent nor to trust to any mere assumption of authority by the agent. See *Latham* v. *First National Bank,* 92 Ark. 315; *Wilson* v. *Shocklee,* 94 Ark. 301.

"The authority of an agent must be shown by positive proof or by circumstances that justify the inference that the principal has assented to the acts of his agent." *Wales-Riggs Plantation* v. *Grooms,* 132 Ark. 155.

(3-4) The undisputed evidence shows that the Motor Company had no authority to sell Dort cars in the territory of Fort Smith, where the alleged sale took place, nor is there any testimony tending to prove that the Motor Company attempted to clothe Payne with such authority. Appellant contends that the appellee clothed Payne with apparent authority to make the sale in controversy because Payne was representing the appellee in the sale of Elcars in the territory of Fort Smith and because he was seen in possession of a Dort car a number of times in the city of Fort Smith. It by no means follows from this that the appellee had clothed Payne with the apparent authority to make the sale of Dort cars in Fort Smith, and if it could be said that there was any testimony to show that he did have authority to make sales there is certainly nothing in the evidence to justify the inference that appellee had given him authority, real or apparent, to sell the car on credit and take an old car in part payment.

In *American Sales Book Co.* v. *Whitaker,* 100 Ark. 363, we said: "But, according to the great weight of authority, an agent who is only empowered by his principal

to solicit orders for or to make sales of goods, has no implied authority to receive payment thereof, or to modify or cancel such sales. * * * His authority is only to make contracts, to solicit orders for goods, or to make sales thereof." *Lee* v. *Vaughan Seed Store,* 101 Ark. 69; see also 2 C. J. 100.

In 2 C. J. 573, we find the following, which we believe a correct statement of the law as to apparent authority: "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."

There is no error in the ruling of the court, and the judgment is, therefore, affirmed.