STANDARD PIPE LINE COMPANY, INC., *v.* HAYNIE CONSTRUC-
TION COMPANY.

Opinion delivered June 6, 1927.

1. CORPORATIONS—AUTHORITY OF AGENTS.—An agreement by the
agents of a pipe line company, authorized to haul and distribute
pipe, to pay for the damages to the road, the use of which was
necessary for distribution of the pipe, *held* within the apparent
scope of their authority.

2. CORPORATIONS—AUTHORITY OF AGENTS.—One dealing with the
agent of a corporation is put upon notice of limitations of his
authority, and must ascertain what that authority is, or deal
with such agent at his own risk.

3. CORPORATIONS—POWER OF AGENT.—The power of an agent of a
corporation to bind his principal is determined by the actual
authority expressly given him, and by the authority necessarily
implied in order to carry out or perform the duty he is directed
to do.

4. APPEAL AND ERROR—CONCLUSIVENESS OF VERDICT.—The verdict of
a jury upon conflicting testimony is conclusive on appeal.

Appeal from Little River Court; *B. E. Isbell,* Judge;
affirmed.

*Arnold & Arnold,* for appellant.

*A. P. Steel, A. D. DuLaney* and *John J. DuLaney,*
for appellee.

KIRBY, J. Appellees, contractors for the construc-
tion of a gravel road in Road Improvement District No.
6, Little River County, brought this suit against the
pipe-line company, appellant, for $185.25 damages alleged
to have been caused by appellant to the roads under con-
struction by the contractors and before its completion
and acceptance by the district.

The testimony tends to show that, while T. S. Haynie
and Brown Arnold, a partnership, the Haynie Construc-
tion Company, were engaged in the construction of this
road, the pipe-line company was engaged in stringing
the pipe and constructing a pipe line through the road
district, and was using the uncompleted road in hauling
and distributing the heavy pipe therefor; that the con-
tractors objected to the use of the road; that Lee and
Allison, both for the pipe-line company, agreed to pay

the cost of any necessary repairs to the road if they were allowed to continue to use it in the distribution of the pipe; that, after this agreement, they continued to use the road from the 15th to the 20th of November in distributing the pipe, and plaintiffs were compelled to use $175.24 worth of gravel and an operator at a cost of $10 to recondition the road after such damage.

The pipe-line company denied having made any such agreement and that any agent with authority to do so had attempted to make or even been consulted about it.

Plaintiff's testimony tends to show that agreement was made with a Mr. Cummings, whose office was in Ashdown, and who was said to be superintendent of the pipe-line company, by B. C. Jenkins, superintendent of construction and bookkeeper for the Haynie Construction Company. They agreed that damage would result from such use by the pipe-line company, and Cummings said, if they would permit his company to haul pipe over the new road, his company would pay for putting new gravel on the damaged portion and for grading and shaping the road after the hauling was completed. The agreement was made early in November, probably after one load of pipe had been hauled. The damages to be paid under the agreement were to be the actual cost of repairs to the Haynie Construction Company, as stated by Jenkins. After the repairs were made, the bill was presented to Cummings, who said he would O. K. it and forward it to the Shreveport office, which would allow it and return the check in payment, but this was never done.

The pipe was being hauled from Wilton, where it was being shipped by train, on the gravel road to the location west, where it was to be used in constructing the line. "This was the only road leading from Wilton to where they wanted to haul the pipe, except an old road they could not use because of the heavy loads they were hauling and bad weather conditions."

Haynie testified that the contract was made with Mr. Allison, who appeared to be the foreman of the company—he was riding horseback—and that the damage

was done by the hauling of the heavy pipe over the road, and that the actual cost of the repairs was the amount claimed.

Cummings testified that he was in the employ of the pipe-line company as clerk to the district foreman, when Jenkins came to the office and complained that a truck was tearing up the road; that he was on the road during the time the pipe-line company was hauling pipe; that he went to pay off the men, which was done twice a month; that he made one or two trips a day over the road west of Wilton, checking up on labor and seeing that all were furnished with tools. Said Allison was the foreman out there, to see that the hauling was done and how much was done; that Lee, the district foreman, who was authorized to make contracts with reference to the work, was not in town, "and Allison and I had authority to move the trucks and put on wagons, and did so, at which time they had been running three or four days. We had two miles of pipe to haul. A joint of pipe was 21 feet long and weighted 750 pounds. It was muddy off the gravel roads, and we saw the road was open, and used it." Witness knew that the road was being worked on, and, if there was any such agreement, Allison and himself made it; that they took the trucks off the road on Jenkins' complaint, and he turned the bill in the latter part of December.

Allison stated that he was assistant "stringing fore-man" of the pipe-line company in Little River County, and went to Ashdown with Mr. Jenkins, who had told him that they would like for him to take the trucks off the road or agree to pay for the damages. Witness took Jenkins to Lee's office, but Lee was not there, and Cummings, Jenkins and himself were the only ones present. Jenkins asked them not to use the trucks any more, and there was probably two miles of pipe to be distributed from the station, and that they took the trucks off the road, as they had the authority to use the trucks or take them off and put on wagons without consulting Mr. Lee, the foreman. Allison said further that hauling and

stringing the pipe along the pipe line would be part of
the construction, and also directing when and where the
trucks and wagons should haul; that Cummings had
authority to do that, but nothing to do with stringing
the pipe; that he was stringing foreman; also that, after
the agreement, the pipe-line company did haul its pipe
over that road and got the benefit of passing over it.   It
was pretty bad hauling over other roads. Witness heard
no complaint "from any of my foremen or superin-
tendents about this agreement having been made."

There was some testimony tending to show that the
road was being used indiscriminately by the traveling
public, but one of the commissioners testified that it had
not been completed nor accepted by the district, and the
plaintiff's witnesses testified that they had made the
tie-haulers and all other heavy traffic quit using the road.

The court instructed the jury, and from this judg-
ment against the pipe line company this appeal is prose-
cuted.

Appellant insists that no agreement was made by
it nor by any of its agents acting within the scope of
their authority to pay for damages or repairs for the
use of this road.   The clerk of its superintendent of
construction, in the absence of the superintendent, was
shown to have made this agreement, which was concurred
in by the "assistant stringing foreman," whose duty it
was to see to the distribution of the pipe along the right-
of-way and the putting it into the ground and connecting
it up into a pipe line.   The testimony shows that these
agents or employees of the pipe-line company had the
authority to haul and distribute the pipe, put it into the
ground and connect it up, and the undisputed testimony
shows that the gravel road under construction was the
only one that could be used to any advantage in the per-
formance of this work, the dirt roads being in bad con-
dition on account of the weather.   That appellee was in
possession of the uncompleted gravel road under con-
struction, with the right to exclude appellant's trucks
and teams from the use of it.   That they continued the

use of it, after objection was made, by consent of the contractor of the road district, under an agreement to pay the damages caused by such use, according to the testimony on the part of appellees, and on their change from trucks to wagons for the hauling, as attempted to be shown by appellant. Neither is it disputed that it cost the amount claimed for reconditioning and repairing the road after its continued use by appellant.

It is true that one dealing with an agent of a corporation is put upon notice of the limitations of his authority, and must ascertain what the authority is or deal with such agent at his own risk, but the power of the agent to bind his principal is determined by the actual authority expressly given him and by authority necessarily implied in order to carry out or perform the duty he is directed to do.

As said in the case of *United States Bedding Co.* v. *Andre,* 105 Ark. 111, 150 S. W. 413, 41 L. R. A. (N. S.), 1019, Ann. Cas. 1914D, 800:

"This implied authority to do acts by which the principal will be bound, which are not expressly authorized, is also spoken of as those acts which are within the apparent scope of the agent's authority. But, to authorize an inference of authority in an agent, it must appear that the thing done or transaction made was necessary in order to promote the duty or carry out the purpose expressly delegated to him."

This court approved, in *Pierce* v. *Fioretti,* 140 Ark. 313, 215 S. W. 648, the following as a correct statement of the law from 2 C. J. 573:

"Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess." See also *Lumber Co.* v. *Fowler,* 137 Ark. 418, 208 S. W. 786; *Ferguson* v. *Guydon,* 148

Ark. 295, 230 S. W. 260; *Denton* v. *Auto Co.,* 147 Ark. 415, 227 S. W. 608; and *Forrest* v. *Benson,* 150 Ark. 89, 233 S. W. 916.

This is not so much an agreement to bind the principal to the payment of damages as appellant contends was beyond the apparent scope of the authority of its agent, but rather an agreement for procuring the use of this road, indispensably necessary for the distribution of the pipe for the construction of the pipe line by appellant's agents and employees having the matter in charge, and was binding upon the appellant, being, if not expressly authorized, easily within the apparent scope of the authority of its agents.

There is no question of ratification of the unauthorized acts of appellant's agents in this case, and no prejudicial error could have resulted from the giving of instruction No. 3 complained of.

The testimony was conflicting to some extent on the terms of the agreement made for payment for use of the road, but all doubts have been resolved in appellee's favor by the jury, and its verdict will not be disturbed.

No prejudicial error appearing in the record, the judgment is affirmed.