LION OIL REFINING COMPANY *v.* FLOCKS.

4-5759                                       136 S. W. 2d 163

Opinion delivered January 29, 1940.

*Jeff Davis, J. A. O'Connor, Jr.,* and *B. L. Allen,* for appellant.

*Miles & Young* and *Pryor & Pryor,* for appellee.

HOLT, J.   Appellee, C. J. Flocks, a real estate broker in the city of Fort Smith, Arkansas filed suit in the Sebastian circuit court, Fort Smith district, against appellant to recover a commission of $500 alleged to have been earned by him, and for an additional $16, the cost of an abstract.

He alleged in his complaint that in January, 1938, appellant, through its duly authorized agent, entered into an oral agreement with him whereby appellee was to

secure an option for appellant to lease certain lots for filling station purposes.

And he further alleged "That under the terms of said agreement, if the defendant, Lion Oil Refining Company, elected to exercise said option, then the defendant, Lion Oil Refining Company, would pay to the plaintiff, C. J. Flocks, the sum of $500 for his services in the matter.

"Plaintiff further alleges and states that he secured an option on said property as provided for by said agreement; that said option was extended by mutual consent of the parties, and on the _____ day of _____, 1938, the defendant, through its duly authorized representative, M. R. Springer, notified the plaintiff and the owners of said property that it had elected to exercise said option, and instructed the plaintiff to forward an abstract of said property. Plaintiff further alleges and states that he was caused to expend the sum of $16 to have said abstract brought down to date.

"That the defendant, although having notified the plaintiff and the owners of said property that it had elected to exercise its option, failed, and refused to carry out said agreement, and refused to pay the plaintiff the sum of $500, which the defendant had agreed to do." He prayed for judgment in the sum of $500 for commission and $16 expended for an abstract on the property in question or a total of $516.

Appellant (defendant below) a n s w e r e d denying every material allegation in the complaint, and in addition denied that either Davis McGehee or M. R. Springer, employees of appellant, had instructions or authority to act in behalf of appellant or to bind it in any way as to the option and lease in question, and further "Defendant states that plaintiff did secure a written instrument from the owners of the property mentioned in his complaint, but denies that said instrument of writing was a valid and binding option for the reason that no consideration was paid therefor by defendant, or by anyone."

The testimony as reflected by the record, stated in its most favorable light to appellee, is to the following effect:

Appellee, Flocks, testified that he is a duly licensed real estate broker in Fort Smith, Arkansas; that about a year and a half ago Davis McGehee, commission agent for the Lion Oil Refining Company, advised him that the company would probably be interested in a location, and he started looking for a location that would be acceptable to the company. He found a location at 11th and A streets that belonged to the Moore heirs, and they stated they would lease the property on a ground rental basis. He notified McGehee, who stated he would take it up with appellant. He secured an option from the Moore sisters and gave it to McGehee, who sent it to Little Rock where it stayed for two or three months.

McGehee later advised him that the option had been lost. He secured another option and gave to Mr. McGehee, who stated he would send it to Mr. Springer, the division manager, at Little Rock.

That McGehee came to his office and stated that he had been to Little Rock, and that Mr. Springer had advised him that they had accepted the option and asked that the abstract be brought down to date. He called Mr. Springer, the division manager, at Little Rock, to confirm the acceptance of the option, and "A. Definitely. I called him up and in this conversation he definitely stated that they were going to exercise their rights under the option, and if the abstract showed the title good the lease would be made; that he would have the legal department draw a written lease and send it here for signature. Q. Did you ever receive any written notification from the Lion Oil Refining Company to that effect? A. No, sir." The Lion Oil Refining Company never did make any objection to the title.

That after the option was sent in he agreed to accept $500 as his commission and was asked by McGehee to write a letter confirming this, which he did; that the first option was extended, and at the time it was extended

they changed the terms of the lease from ten to fifteen years; that he made his demand for fee of $500, and they refused to pay it; that the abstract was sent in to Little Rock at Mr. McGehee's request and accepted there. According to the real estate custom, the abstract is never brought down to date and expenses incurred until the deal is closed with the exception of title examination.

George Ellefson testified on behalf of appellee that he was in Little Rock with Mr. McGehee, and in the office of Mr. Springer, when the question of this option came up; that following a certain telephone conversation, Mr. Springer walked into the room where witness was and said, "Well, George (meaning witness, Ellefson), I am going to take the 11th and A street location"; that shortly Mr. McGehee came in and Springer advised him in witness' presence that they were going to take this location, and they went into the office and entered into some discussion as to instructions to be carried on the lease; that he had no interest in the case.

Davis McGehee testified that he is commission agent for the Lion Oil Refining Company in Fort Smith; that he had talked to C. J. Flocks on numerous occasions in regard to the leasing of the property on 11th and A streets in Fort Smith; that he secured the information that the Lion Oil Refining Company wanted a new location in Fort Smith; that he talked to Mr. Flocks about securing an option on it, and talked to Mr. Springer, the division manager about it. Mr. Springer asked him to go ahead and see what kind of a deal we could get. The option was secured by Mr. Flocks, and he (McGehee) mailed it to Mr. Springer. Mr. Springer objected to the amount of Mr. Flocks' fee and Mr. Flocks wrote a letter stating that he would accept $500 for his fee. At the time the preliminary matters were worked out, he was doing this at the suggestion of Mr. Springer and acting for him. He informed Springer what he was doing and Springer called him over the telephone and told him what to do in regard to this matter, and what information to get.

He was in Little Rock on the date George Ellefson was there, and Mr. Springer asked him to go ahead and have the abstract brought down to date and send it to him. He came back that night and notified Mr. Flocks. He told Flocks that Mr. Springer wanted the abstract brought down to date, and that he had agreed to exercise the option. Mr. Springer told him that he had talked to Mr. Rider, the general manager, at El Dorado, and that they had agreed to go ahead with the deal and to get the abstract up to date and send it in. Mr. Springer frequently works in connection with making leases and contracts of this kind, and he worked up a similar deal with the Lichty Ice Company; that he had numerous conversations with Mr. Flocks and thinks he told him that Mr. Springer was division manager. As far as leasing is concerned, Mr. Springer and Mr. Burchett have general supervision as to new locations.

Mr. Springer on behalf of appellant denied that Mr. Flocks' testimony was true where Flocks stated that he (Springer) had absolutely accepted the option in question. He admitted that he had told Mr. McGehee to have the abstract brought down and send it in. He denied that he told Mr. Ellefson he had accepted the deal. That he did not recall the conversation in which Mr. Ellefson told Mr. McGehee that he had accepted the 11th and A street deal, and that he stated, "Yes, I have accepted it."

The cause was submitted to the trial court, sitting as a jury, and on the testimony adduced, it found for appellee and declared the law as follows:

"The court finds that as a matter of law M. R. Springer, as division manager for the defendant, had actual and apparent authority to employ C. J. Flocks to obtain the option on said property, and in furtherance of said employment had authority to use the services of Davis McGehee; that through these men a valid and binding contract of employment was made on behalf of the Lion Oil Refining Company with the plaintiff, C. J. Flocks, whereby C. J. Flocks was to receive five hundred dollars for obtaining an option on certain property located in the city of Fort Smith, Arkansas, provided that

the option was exercised by the defendant oil company; that C. J. Flocks performed his part of the contract by obtaining the option and the Lion Oil Company, prior to the time the option expired, exercised said option, but that thereafter repudiated said agreement and has failed and refused to pay the said C. J. Flocks for his services rendered according to the terms agreed upon; that the plaintiff is entitled to recover a judgment of $516 against the defendant together with all of his costs herein laid out and expended.''

Appellant, in its reply brief, says that the question before us for determination is as follows: ''stripped of all extraneous matter, the question herein presented resolves itself into a simple one: whether the appellee had the right to rely on the assumption, without inquiry on his part, that Springer, who had no actual authority to exercise this purported option agreement on behalf of appellant, had apparent authority to exercise it, simply because he was the division manager of the appellant company, charged with the duty of supervising sales in Arkansas.''

The testimony is practically undisputed that appellee was asked by Davis McGehee, who was acting under direct orders from M. R. Springer, appellant's division manager at Little Rock, to secure an option on the property in question, and that appellee, Flocks, was to receive a commission of $500 if appellant elected to exercise its rights under the option which Flocks secured from the Moore sisters. Flocks secured the option, and it was sent to Springer, appellant's division manager at Little Rock.

We think the trial court was justified in finding from a preponderance of the testimony that Springer, the division manager, acting as appellant's agent, told McGehee and Ellefson that appellant had elected to exercise its rights under the option, to notify Flocks, and to have the abstract brought down to date; that the abstract was brought down to date, forwarded to Springer in Little Rock; that appellant elected to exercise its right to take

the lease under the option before its expiration date; that appellee, Flocks, had done all that was required of him, and that thereby appellant became liable to appellee.

It is conceded in the instant case that Springer was the division manager for the entire state of Arkansas for appellant, and that necessarily, therefore, his territory included the city of Fort Smith, and we think that there was substantial testimony in the record to warrant the holding of the trial court that Springer was acting as the agent of appellant with actual and implied authority to make the deal in question. Corporations must of necessity act through their duly delegated agents.

This court in the case of *American Southern Trust Co.* v. *McKee,* 173 Ark. 147, 293 S. W. 50, in distinguishing between a general agent and a special agent, said:

"A general agent, unless he acts under a special and limited authority, impliedly has power to do whatever is usual and proper to effect such a purpose as is the subject of his employment. Hence, in the absence of known limitations third persons dealing with a general agent have a right to presume that the scope and character of the business he is employed to transact is the extent of his authority. This rule, as already stated, does not apply when limitations upon the authority of the agent have been brought home to the knowledge of the third person dealing with them. . . . The authority of a special agent must be strictly pursued, and those dealing with him must at their peril determine the extent of his authority; for, as in the case of acts and transactions of a general agent, a special agent cannot bind his principal by acts outside of the scope of his authority."

In *Oak Leaf Mill Co.* v. *Cooper,* 103 Ark. 79, 146 S. W. 130, this court held (quoting headnote): "A principal is not only bound by the acts of his general agent done under express authority, but he is also bound by all acts of such agent which are within the apparent scope of his authority, whether authorized by the principal or not."

And again in *Standard Pipe Line Co., Inc.,* v. *Haynie Const. Co.,* 174 Ark. 332, 295 S. W. 49, this court, quoting

from 2 C. J. 573, said: "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."

While it is true, as appellant contends, that no valuable consideration was paid for the option in question and that the case of *Hogan* v. *Richardson,* 166 Ark. 381, 266 S. W. 299, is a correct declaration of the law as applied to the facts in that case, the principle announced in that case does not apply here for the reason that appellant elected to exercise its right to the lease of the property in question under the terms of the option before the option had expired.

In the instant case the Moore sisters, procured by Flocks to make the lease to appellant, were at all times ready, able, and willing to perform, but were prevented by the action of appellant. Such action on the part of appellant could not defeat appellee's commission.

In *Reeder* v. *Epps,* 112 Ark. 566, 166 S. W. 747, this court held (quoting headnote): "When A. employed B. to sell land for him, an obligation is implied on A.'s part not only to furnish a good title, but a marketable one, and if A. fails to do so upon the production by B. of a purchaser ready, willing, and able to buy the land, B. earns his commission, notwithstanding a defect in the title which prevented the sale."

And in *Dillinger* v. *Lee,* 158 Ark. 374, 250 S. W. 332, this court said: "We have stated the law to be that, 'in the absence of a special contract providing otherwise, an agent employed to sell or find a purchaser for land earns his commission and is entitled to recover the same when he procures a purchaser ready, willing, and able to buy upon the terms named, and the principal enters into a binding contract with the produced purchaser, or, having an opportunity to do so, declines to accept the purchaser."

And in 8 American Jurisprudence, 1089, the author announces the rule as follows: "Although the contract negotiated is void by reason of the statute of frauds, if the party procured by the broker is ready, able, and willing to perform, and the performance is prevented solely by the employer, the broker will be entitled to his commissions."

No errors appearing, the judgment is affirmed.