## J. H. PHIPPS LUMBER CO. v. OMAHA HARDWOOD LUMBER CO.

### No. 24.

District Court, W. D. Arkansas, Fort Smith Division.

Sept. 5, 1941.

724

Bernal Seamster, of Fayetteville, Ark., for plaintiff.

Yale C. Holland (of Kennedy, Holland, DeLacy & Svoboda), of Omaha, Neb., and Karl Greenhaw, of Fayetteville, Ark., for defendant.

MILLER, District Judge.

The plaintiff, J. H. Phipps Lumber Company, is a corporation, organized and doing business under the laws of the State of Arkansas, with its principal place of business at Fayetteville, Arkansas.

The defendant, Omaha Hardwood Lumber Company, is a corporation, organized and existing under the laws of Nebraska, with its principal place of business at Omaha, Nebraska.

Both plaintiff and defendant are now and have been since incorporation engaged in the manufacture, purchase and sale of lumber of various kinds.

On December 3, 1938, plaintiff filed its complaint in the Chancery Court of Washington County, Arkansas, against the defendant, in which it sought to· recover judgment against the defendant in the sum of $15,048.87, and for the cancellation of a contract dated July 2, 1934, and entered into between the defendant and John Clark, as the alleged agent and representative of plaintiff.

Upon petition of the defendant the cause was duly removed to this court on December 29, 1938.

On January 26, 1939, the defendant moved to quash service of process and to dismiss. Summons had been served upon defendant on December 5, 1938, by delivering a copy of summons and stating the substance thereof to J. Oscar Humphrey, Auditor of the State of Arkansas, as agent for service for foreign corporat⁀ons not having a designated agent for service in the State. This motion was argued before Honorable Heartsill Ragon, the then presiding judge of this court, and on August 5, 1939, Judge Ragon filed a memorandum opinion, overruling the motion to quash service of process and to dismiss.

On September 7, 1939, the defendant filed a motion to strike certain portions of the complaint and also to make more definite and certain the allegations of the complaint.

On October 16, 1939, plaintiff filed its amended complaint. This amendment was evidently filed in response to the motion to strike and to make more definite and certain.

In the amended complaint the plaintiff renewed the allegations of corporate existence of itself and of the defendant. It further alleged that on July 2, 1934, while the defendant was qualified to do business in the State of Arkansas, an alleged contract was entered into by and between the defendant and John Clark, who was at that time secretary and general manager of plaintiff; that the contract was for the sale of the assets of the defendant in Arkansas, including certain real estate situated in Pulaski County, Arkansas, and the factory, mill and office equipment then located in the defendant's manufacturing plant at Little Rock, for the sum of $15,000, to be paid by plaintiff by allowing the defendant to retain 10 per cent of the invoice price of purchases of lumber made by the defendant from the plaintiff.

The contract provided that a deed to the real property should be executed by the defendant and placed in escrow with the Omaha National Bank of Omaha, Nebraska, to be delivered to plaintiff upon the completion of the terms of the contract or upon the payment of the sum of $15,000 by the plaintiff to defendant. The contract specifically set forth the manner in which the price of the lumber to be purchased

by defendant from plaintiff was to be determined, and provided that certain discounts in addition to the discount of 10 per cent (payment) should be allowed the defendant.

The contract also contained the following stipulation: "This agreement is predicated upon the fact that John Clark, is, and shall continue during the period covered thereby to be in the control and management of the party of the second part; and if he should dispose of, abandon, or lose such management or control, or cease to be actively connected with the business of party of the second part, then and in that event party of the first part may, at its option, rescind this agreement, and any or all of the stipulations thereof, and may at its option, declare the whole amount of the purchase price hereinbefore stipulated, or any extension or renewal thereof, or any of said promissory notes or renewals thereof, to be immediately due and payable, anything in this agreement to the contrary notwithstanding."

The contract does not contain any stipulation fixing the time of performance and no mention is made in the contract of the execution of any promissory note or other evidence of indebtedness by the plaintiff.

It was executed at Omaha, Nebraska, on behalf of the defendant by Frank D. Field, president, and attested by E. R. Pierson, secretary, in the presence of A. C. Sconce and J. Reddan. On behalf of the plaintiff the contract was executed by John Clark, secretary and general manager.

The plaintiff further alleged that the contract was entered into by the said John Clark without the knowledge, consent or authority of the officers or stockholders of plaintiff; that the execution of the contract was not authorized by the board of directors of plaintiff, and that the said Clark had no authority, either actual or implied, to bind plaintiff by such an agreement or contract.

That the plaintiff and its officers and directors first knew of the existence of said contract as a result of an independent audit made of the affairs of the plaintiff in January, 1938; that previous audits and reports of the affairs of the plaintiff had been made under the direction of the said John Clark, and that the said John Clark had concealed from the directors of plaintiff the existence of said contract.

The plaintiff further alleged that the contract was void because of the stipulation hereinbefore set forth, in that the said John Clark and the defendant intended and tried to perpetuate the said Clark in office as secretary and manager of plaintiff, without the consent and knowledge on the part of the directors of plaintiff; that the defendant had withheld on purchases made by it from plaintiff the sum of $6,431.73; that the plaintiff had also sold and delivered to the defendant lumber of the value of $7,490.86, upon which interest in the sum of $57.76 had accrued and no part of which had been paid; that the defendant had withheld the sum of $1,068.52 from the plaintiff, claiming that it had paid said sum of money as expenses of maintainance of the property described in the contract and located at Little Rock, and that there was then due the plaintiff the sum as claimed in its original complaint.

On October 26, 1939, the defendant filed its answer in which it admitted its corporate existence and admitted the execution of the contract as alleged by plaintiff; that prior to the execution of the contract plaintiff and defendant were competitors in Arkansas, and that one of the inducements for the execution of the contract was that the defendant would cease to do business in the State of Arkansas and would become the customer of and sales agent for the plaintiff in Nebraska and surrounding States; that shortly after the execution of the contract it withdrew from the State of Arkansas, and ceased to be a competitor of the plaintiff in said trade territory, and did in fact become a customer of the plaintiff in Nebraska and surrounding trade territory, and over a period of years continued to buy many carloads of lumber from the plaintiff and to sell for the plaintiff many carloads of lumber, under and pursuant to the contract, and that said acts were done with the full knowledge, consent and acquiescence of the plaintiff, its officers, directors and stockholders.

That immediately after the execution of the contract the plaintiff took charge of all the machinery and equipment in the Little Rock plant and removed a portion of the personal property from Little Rock, Arkansas, to Fayetteville, Arkansas, and that the plaintiff company had full knowledge of the terms of the contract or in the exercise of reasonable care and business diligence could have known of the execution of said contract and the acquisition of the Little Rock plant and equipment;

that John Clark was the secretary and general manager of the plaintiff and had for years been the chief operating officer of plaintiff, and that he had been held out by the officers and directors of plaintiff to the defendant and to the business world in general as the active head of said business and was the person with whom all business matters of the company were to be transacted; that the said Clark had actual and implied authority to consummate the transaction between plaintiff and defendant, and that the plaintiff is barred and estopped to question the authority of the said John Clark.

That it was important to the defendant that the plaintiff company should be under a competent and efficient management during the life of the contract and at all times able to perform its obligations under the contract; that the defendant knew the said John Clark was skilled, competent and efficient, and that it would not have been satisfied to enter into the said contract with plaintiff unless the plaintiff company was to be managed by the said John Clark; that the connection of the said John Clark with the plaintiff company has been terminated and that by reason of such termination the unpaid balance of the purchase price has become due automatically, and that there is due a balance of $8,568.27.

The testimony, together with exhibits, comprising 668 pages, was heard by my predecessor, the late Judge Ragon, on February 14–16, inclusive, 1940, and I have carefully read the transcript of such testimony and exhibits, and have been favored with most excellent briefs by counsel for the parties.

I do not find it necessary to pass upon the contention made by plaintiff that the insertion in the contract of the stipulation hereinbefore set forth voids the contract as contrary to public policy, because, in my opinion, a determination of the other issues raised by the pleadings, and which have been fully covered by the testimony, are conclusive of the rights of the parties.

John Clark, at the time of the execution of the contract, was and had been for several years secretary and general manager of the plaintiff corporation. The stockholders of the plaintiff were principally, if not all, members of the Fulbright family of Fayetteville. The board of directors were four members of the Fulbright family and John Clark. Clark was a trusted employee and had been active in the management, not only of the plaintiff corporation, but of other business interests of the Fulbright family. The business policies of the plaintiff, as well as the other corporations with which Clark was connected, were largely determined by conferences between himself and members of the Fulbright family, particularly Mrs. Roberta Fulbright, the mother of the other owners, and J. W. Fulbright, a son. At the time the contract was executed Mrs. Fulbright was president and J. W. Fulbright was vice president of the plaintiff.

It is not seriously contended by the defendant that Clark had specific authority to execute the contract on behalf of the plaintiff. It is admitted that at a meeting held on July 27, 1934, during the pendency of the negotiations between Clark and the defendant, the subject was not mentioned by Clark to the other directors. The contract is dated July 2, 1934, but it was not in fact signed until after July 27, and prior to August 16, 1934. None of the witnesses was able to state the exact date on which the contract was executed. The first draft of the contract prepared by the attorney for the defendant contained the following:

"In witness whereof the said parties, in accordance with the resolutions of their respective boards of directors, have caused these presents to be signed by their presidents and attested by their secretaries, respectively, and their respective seals to be hereunto affixed."

The contract signed did not contain the above clause, but did contain the following: "In witness whereof the said parties hereby cause these presents to be signed by their duly authorized officers and their seals to be hereunto affixed."

Alva C. Sconce, vice president of the defendant, who handled the final negotiations and the execution of the contract testified that he and Clark both agreed at that time that there had been no meetings of the boards of directors of either the plaintiff or the defendant, and that he did not at any time subsequent to the execution of the contract ask Clark to obtain the signature of the president of plaintiff. Later, the directors of the defendant, in a meeting duly assembled for that purpose, ratified the execution of the contract on behalf of the defendant, but no such meeting was ever held and no action taken by the directors of the plaintiff. Clark testified that he discussed the matter with Mrs. Roberta Fulbright, but this was denied, and

I do not think Clark mentioned the contract to any of the directors of plaintiff until they learned of it and called upon him for an explanation.

The defendant earnestly contends that since Clark was the general manager of plaintiff that he had authority to execute the contract; that the authority was implied because of his general powers as manager of the plaintiff, and that he had authority to do any act on behalf of the plaintiff which was necessary in the prosecution of the plaintiff's business or any act which he was held out to the public as having authority to do.

The fact that Clark occupied the position of general manager was sufficient to bind the plaintiff on anything pertaining to the ordinary business of the corporation, but did not bind the corporation if the act done or the agreement entered into by him was without the apparent scope of the business actually carried on by the plaintiff and entrusted to his management. The corporate charter of the plaintiff authorized it to do what was provided for in the contract, but the act of Clark in executing the contract was not usual, customary or reasonably necessary in the conduct of the ordinary business of the plaintiff. Such act on the part of Clark was an extraordinary one.

In Pierce v. Fioretti, 140 Ark. 306, 215 S.W. 646, 648, the court said: "Apparent authority in an agent is such authority as the principal knowingly permits the agent to assume or which he holds the agent out as possessing; such authority as he appears to have by reason of the actual authority which he has; such authority as a reasonably prudent man, using diligence and discretion, in view of the principal's conduct, would naturally suppose the agent to possess."

Tested by this rule, the testimony does not disclose that the plaintiff knowingly permitted Clark to assume the authority, and the plaintiff did nothing to hold him out to the defendant as being possessed of such authority.

It is clear that the defendant company knew that Clark did not have authority to execute the contract, and the business theretofore conducted between the defendant and plaintiff was not such as to lead the defendant to suppose that Clark possessed the authority to execute such contract on behalf of the plaintiff. This being true, the contract as executed was not binding upon the plaintiff. Ozark Mutual Life Association v. Dillard, 169 Ark. 136, 273 S.W. 378; Anderson-Tully Company v. Gillett Lumber Company, 155 Ark. 224, 244 S.W. 26; Standard Pipe Line Company, Inc., v. Haynie Construction Company, 174 Ark. 332, 295 S.W. 49; Plant v. White River Lumber Company, 8 Cir., 76 F.2d 155.

The defendant was charged with the knowledge of Section 2191 of Pope's Digest of the Statutes of Arkansas which provides that "the business of every corporation shall be managed by a Board of Directors", and of Section 2195 of Pope's Digest of the Statutes of Arkansas which provides that the officers and agents of a corporation "shall be chosen in such manner, hold their offices for such terms and have such powers and duties as may be prescribed by the by-laws or determined by the Board of Directors".

The knowledge of defendant as to the authority of Clark was sufficient to raise a doubt as to his authority to bind plaintiff by the contract and it was defendant's duty to make inquiry of the other officers of plaintiff. Had such inquiry been made the facts could and would have been disclosed. Not having made such inquiry the defendant cannot hold the plaintiff responsible for Clark's unauthorized signing of the contract, unless such contract was subsequently ratified by plaintiff. 19 Corpus Juris Secundum, Corporations, §§ 996, 997, pages 459–461; Standard Pipe Line Co., Inc., v. Haynie Const. Co., supra; Anderson-Tully Co. v. Gillett Lbr. Co., supra; Pierce v. Fioretti, supra.

The plaintiff had the power to authorize the execution of the contract by Clark or any officer or agent whom the directors might designate and since the contract was and is within the corporate powers of the plaintiff, the defendant contends that it has been ratified and that plaintiff is bound by its terms.

Ratification must be made with full knowledge of the material facts connected with the transaction and this knowledge must be possessed by the officer, agent or board that has the power to disaffirm. Here there was no formal ratification by the board of directors. No action of any kind was taken by the directors. Such action was not necessary if the board of directors knowingly recognized the validity of the contract or accepted and retained the benefits from it.

The testimony discloses that the first information the directors of the plaintiff obtained about the contract was received in November or December, 1937. At that time they learned that a contract with the defendant had been signed by Clark, but full knowledge was not obtained until the independent audit was completed in April or May, 1938. When such information was received by the directors the defendant was advised that the plaintiff did not consider itself bound and Clark was discharged or resigned as general manager of plaintiff on or about July 1, 1938.

It was incumbent upon plaintiff to act promptly when it received the information and I think it did act as promptly as it could reasonably under all the existing circumstances. The plaintiff did not make any more sales under the contract to the defendant after it ascertained the facts. Clark had operated under the contract for approximately three and one-half years before the directors of plaintiff obtained full knowledge of the facts, but the proof does not disclose any lack of diligence on the part of the plaintiff when it did obtain sufficient knowledge upon which to act.

The plaintiff did nothing to mislead the defendant and such benefits, if any, that plaintiff received and retained were received and retained in ignorance of the facts. Plaintiff has offered to restore to the defendant the personal property that Clark received under the contract. A careful reading of the testimony and exhibits thereto convinces me that the plaintiff did not ratify the contract. 19 Corpus Juris Secundum, Corporations, §§ 1014–1020, pages 486–504; Cleburne County Bank v. Butler Gin Co., 184 Ark. 503, 42 S.W.2d 769.

The plaintiff has acted in good faith with the defendant since it obtained knowledge of the contract. The contract itself is a most unusual one. The defendant in effect attempted to wrest the control of the plaintiff corporation from its board of directors and vest the control in Clark for the term of the contract and no one knows the time that the contract was to remain in force. It might have been one year or ten years, according to the amount of lumber the defendant should decide to purchase from the plaintiff. The stipulation in the contract heretofore set forth in extenso was intended to prevent the board of directors of plaintiff from discharging Clark until the defendant had actually been paid $15,000. In other words, the defendant sought to bind the plaintiff to retain Clark as manager regardless of the fiduciary relation the board of directors bore to the stockholders of plaintiff corporation.

The facts and circumstances disclosed by the testimony when considered along with the provisions of the contract convinces me that the defendant was seeking primarily a sale of its Arkansas plant and that it knew Clark did not have authority to purchase it on behalf of plaintiff. The manner of handling the account of the defendant by Clark and his actions after the contract was executed convinces me that he did not intend that full knowledge of the transaction should be obtained by the directors of the plaintiff. The record reflects that for several months prior to the signing of the contract that a very friendly relation existed between the officials of defendant and Clark, much more so than is usual between competitors.

The directors of plaintiff did know that the defendant was purchasing lumber from it and that defendant was retaining ten per cent of invoice price in accordance with a contract, but such was not unusual. There was nothing on the books or in the account of defendant with plaintiff to indicate that plaintiff had purchased any property from defendant for an agreed sum.

The plaintiff is entitled to a recission of the contract and to recover from defendant the sum of $6,431.73, being the amount retained by defendant from invoices, and the sum of $7,548.62 for lumber sold defendant and for which payment has not been made, less trade discount of five per cent or a sum of $7,171.19 on this item, and the sum of $1,068.52 for amount withheld from plaintiff as maintainance expenses on Little Rock property, or $14,671.44, less value of personal property obtained by plaintiff in the sum of $3,600, making a total of $11,071.44, with interest at six per cent per annum from December 3, 1938, the date suit was filed. All costs to be paid by defendant.

A decree in accordance with the above will be entered.